## SCHOOL DISTRICTS AND VILLAGE BOUNDARIES.

Court of Appeals for Holmes County.

ALBERT E. CLINE V. OATH MARTIN ET AL.

Decided, October Term, 1914.

*Schools—Erection of School Districts and Their Boundaries—Incorpora-*
*tion of a Village in Effect Makes the Included Territory a School*
*District—Sections 4687 and 4681.*

A petition, signed by the requisite number of male citizen electors, hav-
ing been filed in the proper probate court, praying that a special
school district be created; and the fact being that the territory
described in the petition embraces an entire incorporated village,
together with other contiguous territory outside of such village;
and it further appearing that such village never had been organized
as a village school district by the election of a board of education
therein:

*Held*: That by the creation of such village the territory within its
limits was withdrawn from the operation of the statute providing
for the establishment of special school districts, and that the pro-
bate court in the proceeding was without jurisdiction of the sub-
ject of the petition, and its order purporting to create a special
school district composed in part of such village territory was in-
operative and void.

GRANT, J. (sitting in place of Voorhees, J.); SHIELDS, J.,
and POWELL, J., concur.

This cause is before us by appeal from the judgment of the
court of common pleas. The facts necessary to an understand-
ing of the issues involved are in substance these:

The village of Nashville became such by legal incorporation
in 1881 and has so remained ever since. The territory included
within its limits was taken from several townships. Nashville,
as such, was never formally organized into a village school dis-
trict by an election of a board of education, or by other visible
exercise of whatever powers it may have possessed for that
purpose, but the administration of its schools continued after its
incorporation, as they had done before, under the auspices of
the townships out of which the village was made up.

In May, 1913, a petition was filed in the probate court of
this county, in due form of law, the object and prayer of which
was the establishment of a special school district, to be com-
posed of the territory included within the village of Nashville
and the territory then attached to it for school purposes, and
also other contiguous territory, properly described. The peti-
tion was signed by the requisite number of persons and con-
tained apt allegations necessary to bring it within the statute,
the aid of which was invoked in the proceeding to grant the
relief sought.

The probate court took jurisdiction of the petition, and there-
upon such proceedings were had in the cause as resulted in grant-
ing the prayer of the petition and the establishment of the
special school district asked for, if that court had the legal
power to do what it undertook to do in the premises.

After the organization of the purported special school dis-
trict, and assuming that the probate court had jurisdiction to
entertain and prosecute the proceedings resulting in its estab-
lishment, an election was attempted to be held in a part of the
territory embraced within its limits, the object of which was to
cause bonds to be issued, the avails of which were to be used
in the alleged special district. The result of this purported
election was declared to be in favor of the bond issue in ques-
tion.

Matters standing thus, the present action was begun in the
court of common pleas.

The plaintiff is a tax-payer of the territory sought to be
taxed and affected for payment of the bonds voted, and sues in
that capacity.

The defendants are those who claim to be the members of the
board of education of the purported special school district, and
one of them is the ostensible clerk of that body, and they are
sued as such.

The prayer of the petition is that the defendant be perpetual-
ly enjoined from proceeding further in the selling of the bonds
claimed to have been authorized by the alleged election referred
to, upon the ground that the election was wholly irregular and

void. It goes further than that, and asks that the so-called school authorities be permanently prohibited from raising any money by taxation, from expending any money as such board, and from doing any act or thing under a claim of right in their assumed official capacity, for the reason, as is said, that the probate court was without jurisdiction to act upon the petition for the creation of a special school district, and that its judgment and proceedings in that behalf were altogether null and conferred no right.

The jurisdiction which lies at the root of the existence of the special school district if it exists, being thus directly called in question, it is clear that if that contention prevails the entire proceeding in the probate court will have been void from the beginning, and the secondary question of the invalidity of the bond election will fall with it and therefore becomes relatively unimportant here.

We are therefore to address our consideration to this controlling issue in the case. It is somewhat complex and the solution of the matter is not without its difficulties. The case has been ably argued at the bar, and in the briefs of counsel the statutes and authorities deemed to be material have been marshaled with commendable industry and discrimination.

We have reached, with some diffidence, a conclusion in the case which, while not in all respects free from doubt in our own minds, will have to stand as the judgment of the court.

By the act of 1853 and the acts amending and supplementing it, it was entirely competent for the village of Nashville, when it emerged from its theretofore township existence and became a corporate entity, to become a village school district. All that was necessary to that end was the election of a board of education, which Nashville village did not do.

The act of 1853 declared it to be such a district. But the Supreme Court, in *Cist* v. *State,* 21 O. S., 339, by construction held that the act was not self-executing. In that case it was further held that if an incorporated village was formed within a subdistrict, or included a material portion thereof, no portion of such subdistrict was by reason of such incorporation

withdrawn from the school jurisdiction of the township, but that
the whole continued to be a subdistrict until the actual election
or appointment of a separate school board, and that the part
of the subdistrict not included within the limits of such incor-
porated vilage was "territory annexed thereto for school pur-
poses," within the meaning of the statute.

This seems to fix the status of the Nashville territory and to
put it for the time being out of the class of village districts,
no board of education having at any time been elected or ap-
pointed. The act thus construed and as construed, keeping
Nashville after its incorporation as a village where it was be-
fore in regard to its standing as a school district, was repealed
in 1904 (O. L. 97, v. 379).

The part of the repealing act which became Section 3889 of
the Revised Statutes, provided that:

"  *  *  *. Upon the creation and incorporation of a vil-
lage, the same shall thereby become a village school district; and
if said village was, previous to its creation and incorporation,
included within the boundaries of a special school district but
said special school district included more territory than is in-
cluded within the village limits, said territory shall be, and
thereby is, attached to said village school district for school
purposes."

It is not necessary now to determine whether this act by its
own force made Nashville a village school district, or not. But
it is to be observed as a significant fact, we think, that although
territory which became a village district upon the mere incor-
poration of the village, *ipso facto,* although part of a special
school district before, was not allowed to preserve that status
thereafter; the territory outside the village limits, although up
to that time a part of the special district, was permitted to re-
main only as *attached territory.* It passed into, and became
merged in the village district and lost its standing as well as
its name of a special district. The policy of the law in Ohio
for more than a half century consistently has been to make
school districts coincide territorially with the political units
within which they have been formed, as township, village and

city districts, and to have them, as they have passed out of one status, at once emerge into the one next higher. Exceptions to this rule, such as special districts and joint districts, have been allowed only upon controlling considerations of public convenience and welfare. So that, in this case we are dealing with what must be a departure from the line of public policy, if it is allowed.

In addition to the provisions of Section 3889 of the Revised Statutes, just quoted, the purpose of which seems to have been to take care of the exceptional cases of territory forming a special district becoming by force of the act village districts, the next preceding section, 3888, declared that "Each incorporated village now existing or hereafter created, together with the territory attached to it for school purposes and excluding the territory within the corporate limits detached for school purposes, shall constitute a village school district." When at last our legislation on this subject passed into and became a part of the present General Code, Section 4687 thereof provided that:

"Upon the creation of a village, it shall thereby become a village school district, as herein provided; and if the territory of such village, previous to its creation, was included within the boundaries of a special school district, and such special school district included more territory than is included within the village, such territory shall thereby be attached to such village school district for school purposes."

And by Section 4681 it was further provided that:

"Each village, together with the territory attached to it for school purposes, and excluding the territory within its corporate limits detached for school purposes, and having in the district thus formed a total tax valuation of not less than one hundred thousand dollars, shall constitute a village school district."

By Section 4679, there was a still further provision that "the school districts of the state shall be styled respectively 'city school districts,' 'village school districts,' 'township school districts,' and 'special school districts.'"

We have now traced the rise and progress of the legislation of Ohio, so far as it seems to appertain to the status of school territory co-extensive with village territory, when the latter has passed into the village condition from the lower forms of political existence. We are to consider these latest enactments as expressing the matured legislative thought, and the purpose of the state in respect of the subject-matter. What we conclude the legal effect of them is, as applied to the case in hand, will be remarked upon presently. We need not observe that the statutes last quoted were in force when the proceedings which are attacked in this action were begun.

Some of them were under review by the Supreme Court in the case of *Buckman, Auditor,* v. *State, ex rel Board of Education,* 81 O. S., 171.

Construing the decisive section, the court fixes its intendment as follows:

"By force of the provisions of Section 3888, Revised Statutes, as amended April 2, 1906, and in effect April 16, 1906, 98 O. L., p. 217, each incorporated village then existing, April 16, 1906, or since created, together with the territory attached to it for school purposes and excluding the territory within its corporate limits detached for school purposes, and having in the district thus formed a total tax valuation of not less than one hundred thousand dollars, constitutes, and is, a village school district, no vote of the electors of such village being necessary to the creation or establishment of such district."

In the course of the opinion in that case, it was said:

"It is the contention of counsel for defendant in error that the village of Kenmore upon its incorporation did not thereby by force of the provisions of the above statute become at once or at all a village school district, but that in order to create or establish such district of the territory within the municipality, it is necessary that the proposition to organize such village school district be first submitted to the electors of the village and be favorably determined by a majority vote of such electors. We are of the opinion that neither the grammatical construction nor the proper interpretation of the language employed in the above statute leads to the conclusion for which counsel for defendant in error contend. A consideration of the history of the legislation on the subject of the re-organization and main-

tenance of our common school discloses that from 1880 to 1906 it was the policy of the state, so declared to be by express statutory enactment, that every incorporated village within the state together with the territory thereto attached for school purposes should constitute a village school district without regard to the tax valuation of the property within the district so formed and without submitting to a vote of the electors of such village the question of establishing such village district.''

The writer of this opinion argued that case, for the losing side, in the Supreme Court, and is entirely familiar with the scope of the discussion and how far the intention at least was manifest to leave no ambiguity on the record as to any point essential to the issues involved; he personally has no doubt upon the subject. The language we have quoted from the opinion makes the meaning tolerably clear, as we think. We shall not, therefore, comment more particularly upon it.

Over against this mass of statutes we now proceed to place the one, under favor of which, if at all, the proceedings had in the probate court acquired their validity and that court its jurisdiction of the subject-matter. It is the enabling act by which the proceedings assailed here must stand or fail, according as it shall be allowed to prevail over, or yield to, the force of the statutes already quoted, taken as an entirety. It is Section 4728 of the General Code, and it reads as follows:

''A special school district may be formed of any contiguous territory, not included within the limits of a city or village, which has a total tax valuation of not less than one hundred thousand dollars.''

As the law at last stood when the case in the probate court was begun, as it was construed in *Buckman* v. *State*. we think it would perhaps be safe to infer that the corporate existence of the village of Nashville, *ipso facto* and without more, constituted that territorial entity a village school district. But, lest it be thought perilous to go so far as that, in view of the decision in *Cist* v. *State, supra,* we need not go to the length of so holding in terms.

But from a careful comparative reading of all the statutes referred to, we are entirely satisfied that if the village of Nash-

ville. was not at the time stated, technically and visibly a vil-
lage district, it nevertheless was such district *in esse*. All that
by possibility could have been lacking was the election of a school
board. Now a trust is never allowed to fail for want of a
trustee, and especially ought this to be true in the solemn trust
of administering a school system in accordance with the known
public policy of the state. The village district may have been
still a district *in gremio legis*, in the bosom of the law only,
but it was none the less a potential district for all that. It
was, and we so hold, so far a district that its territory was no
longer the subject of being formed into a special district. It
was sequestered territory, territory set apart and withdrawn
from appropriation to any other use than that to which the fact
that Nashville was already a village had by operation of law
devoted it. The policy of the state to have its school units
coincide with its political units, should not permit the mere
default of villagers to elect a board of education, to defeat that
policy.

Indeed it would perhaps be safe to say, without this consider-
ation, that the village territory in question is immune from ap-
propriation as a special district by force of the words of nega-
tion found in Section 4728, under which, if at all, the proceed-
ings in the probate court could be upheld. Whether a vote of
the electors was necessary upon the subject, according as the
valuation should pass beyond or fall short of the hundred thou-
sand dollar mark, we do not regard as material. That question
could only affect the passing of the territory from its old con-
dition as a township district into its new status as a village
district. It would not subject the territory in any event to
invasion or entry by special district seekers; it was not open
or unappropriated territory. It was foreclosed by what we
consider the force of the statute, against entry in any form
except that into which it would pass as it should emerge into the
village state. We are sure the statute contemplates no such
thing as that a village, complete in all its parts, and wanting
only the movement of its electors, towards forming a school
board, may be seized, judicially, and thrust back, hopelessly,
into a township or special district condition.

The probate court, besides being a statutory court, in the first place, was acting in the proceeding under review specially only. Its jurisdiction, therefore, was a limited jurisdiction, and it is not to be aided by presumption. *Harrington* v. *Heath,* 15 Ohio, 483; *Fee* v. *Iron Co.,* 13 O. S., 563; *Handy* v. *Iron Co.,* 37 O. S., 366.

We also reach the same conclusion on another ground. We are not satisfied from the proof before us that the territory in question had a tax valuation of not less than one hundred thousand dollars when the petition was filed in the probate court. The record in this respect is not satisfactory and we must require full proof on a jurisdictional fact like this. The addition claimed to have been made to the duplicate in order to reach the $100,000 mark, was of doubtful regularity and was designed to be only temporary in its effect.

We conclude and hold that the probate court, in the proceeding here challenged, was without jurisdiction of the subject thereof, and that whatever it did in that respect was inoperative and void.

This being our judgment, the election also called in question in this action, falls under the same condemnation, and no discussion of its alleged invalidity on other and independent grounds, is deemed necessary.

The plaintiff is entitled to the relief prayed for and a perpetual injunction is awarded.

A decree may be drawn accordingly.