CHARLIE LINDSEY v. THE STATE.

No. 8505. Decided April 16, 1924.

**Murder—Insanity—Newly Discovered Evidence.**

Where, upon trial of murder, the defense was insanity, and the trial took place about a month after the homicide, and in his motion for new

trial newly discovered evidence was claimed, to which was attached the affidavit of a physician that he would testify that he told the officers at the time of defendant's arrest, at their request that defendant was insane and did n●t know right from wrong, etc., and it was further shown that this testimony could not have been obtained sooner, and the law not requiring the same degree of diligence in cases of insanity as in others, a new trial should have been granted. Following: Schuessler v. State, 19 Texas Crim. App., 479, and other cases.

Appeal from the Criminal District Court of Harris. Tried below before the Honorable C. W. Robinson.

Appeal from a conviction of murder; penalty, death.

The opinion states the case.

*J. P. Rogers,* for appellant. Cited: Webb v. State, 5 Texas Crim. App., 596; Warren v. State, 9 id., 619; Cannon v. State, 41 Texas Crim. Rep., 486; Lane v. State, 59 id., 595; Harris v. State, 172 S. W. Rep., 975.

*Tom Garrard,* Attorney for the State and *Grover C. Morris,* Assistant Attorney for the State.

MORROW, PRESIDING JUDGE.—The offense is murder, punishment fixed at death.

Appellant shot and killed his former wife after a married life of about a year. Deceased and appellant were divorced, and about six months thereafter, the homicide occurred.

No exculpatory or mitigating facts were proved as attendant upon the homicide. The sole reliance of the appellant was the proof of insanity.

Evidence was introduced upon the trial of the case to the effect that after the marriage, appellant became obsessed with the idea that his wife was ''doping'' him; that she fed him her menses. His health became bad, and he attributed his decline to the sinister conduct of his wife. Evidence of numerous declarations and acts giving expression of this mental attitude was introduced. Doctors were called who testified from personal examinations and upon hypothetical questions and expressed opinions favorable to the defense of appellant's insanity. Some non-expert testimony to the contrary was introduced.

Appellant was tried about a month after the homicide. As one of the grounds for a new trial, the discovery of new evidence was claimed. To the motion was attached the affidavit of Dr. York in which, it is stated that at the request of the officers having appellant in custody, he examined and talked to the appellant at the jail. The following language of the witness is taken from the affidavit:

"From my examination, it is my opinion that Charlie Lindsey has been suffering from delusional insanity for months, probably years, suffering from delusions of persecution; and that at the time of the killing of his wife, under the circumstances, did not know right from wrong, and was not responsible for the acts committed. I saw him again on the 26th day of September, and his condition has up to this time, mentally changed. I will therefore say, that it is my opinion that the said Charlie Lindsey was insane at the time he committed the acts for which he was convicted, and has remained so ever since, and is at the present time insane and of unsound mind.

"I am a graduate of the Medical College of Cincinnati, Ohio, having graduated from said institution in the year 1896, and having been engaged in medical practice since said time. During the past twelve or fifteen years my practice has been confined to the treatment of mental and nervous diseases. I have had charge of the insane ward at the Harris County Jail, as an employee of the County of Harris since 1913, and have had occasion to treat and observe hundreds of insane persons.

"I did not disclose to the counsel of the defendant prior to the conviction in this case, the fact that I had ever treated or seen the defendant. I did, however, on the day before the conviction in this cause, have a conversation with the District Attorney and other assistants of the District Attorney, by phone, and told each of them that the said defendant was of unsound mind and did not have knowledge of the fact that he had done any wrong in killing the deceased."

The motion is supported by the oath of appellant's attorney to the effect that the condition of the appellant was such that the attorney was unable to obtain from him the facts necessary to his defense, and that the attorney knew nothing of the examinations made by Dr. York. The motion for new trial was controverted upon the theory that the diligence was inadequate. Oral testimony was taken, and some additional non-expert testimony was introduced upon the issue of insanity. Dr. York reiterated in substance the things that he had said in his affidavit which have been quoted above. He also said:

"Since I made an examination of defendant in company with four other doctors on September 29th, I have read a great deal of the record that was made on the trial of the defendant, but have not read it all. From the record I have read, from conversations with defendant, from testimony I have heard adduced today from Jim Watson, Selina Charles, Mr. Hightower, and the general appearance of the defendant, I would say that defendant is now insane."

The witness said further:

"Then, in my opinion, the man has been suffering from these illusions or hallucinations for quite a while, and being of a man 'persecutorian' nature, at the time he committed this act, when he killed his wife, I don't believe at that time when he did that, that he

knew right from wrong.  I do not believe that he knew right from wrong at that time because he was laboring under the illusion that she had been persecuting him.  I say that because the history of the case, to me indicates that he was suffering from illusions.''

Several doctors testified on the hearing of the motion for new trial.  One of them a specialist in mental diseases, said in substance that he did not really believe that the appellant was crazy, but that he did believe he had delusions to the effect that his wife was persecuting him and that he was not fully responsible from that standpoint. The testimony of the other doctors is thus summarized from the testimony of one of them:

''My opinion from the records in the case and the testimony I have heard is that the defendant at the time of the killing was insane, and that he is now insane.''

The greater part of the oral testimony upon the motion for new trial was upon the question of insanity and not upon the question of diligence.  Appellant's attorney testified that he had no knowledge that Dr. York had examined the appellant until after the verdict.  He admitted that he knew that Dr. York was the county physician and assumed that the State would use him as a witness if he was possessed of any relevant facts.  Some members of the District Attorney's office took issue with appellant's counsel upon his knowledge and testified that appellant's counsel gave expressions during the trial indicating that he knew that Dr. York would testify that the appellant was sane but that he refrained from using him because Dr. York would also testify that the appellant was a dangerous person and should be imprisoned.  The law requiring that one may not obtain a new trial to procure evidence which, by diligence, he might have had at the trial, is stricter in other cases than in those where insanity is the defense.  This principle has been applied in Schuessler v. State, 19 Texas Crim. App. 479, and several subsequent cases.  See Horhouse v. State, 50 S. W. Rep., 361; Hill v. State, 53 S. W. Rep., 845; Walker v. State, 86 Texas Crim. Rep., 441, 216 S. W. Rep., 1085; Toussaint v. State, 92 Texas Crim. Rep., 376.  In the Walker case, supra, in which the motion for new trial was based upon newly discovered evidence, the court said:

''This in a sense may not be said to be newly discovered testimony, because, if it was not known, it could have been known by reasonable diligence prior to the trial; but the rule in Texas with reference to cumulative evidence and strict diligence does not apply to the question of insanity, viewed in the light of newly discovered testimony.''

Also:

''It is not the policy of the law to punish criminally people whose minds are demented.  There would scarcely come a case where an equitable showing is more strongly made, if not strictly a legal one, than in this case.  In view of the overwhelming evidence of these

affiants to the effect that appellant was insane, we are of opinion that the jury should pass on it in the light of this testimony, although it may not have been newly discovered.''

Assuming that in the present case the learned trial judge determined on conflicting evidence heard on the motion that the appellant's attorney acquired during the trial, information concerning Dr. York which in a different case might nullify his claim that the evidence of Dr. York was, in a legal sense, newly discovered, we are of the opinion that under the rule in an insanity case, the appellant should be accorded a new trial. Our statute declares that ''no act done in a state of insanity can be punished as an offense,'' and that ''no person who becomes insane after he committed an offense shall be tried for the same while in such condition.'' These are mandatory expressions of the Legislature, intended to protect not only the accused against wrongful punishment for acts done in the state of insanity, but to protect the public against committing the wrong of trying one who is mentally deranged to the extent contemplated by the laws of his state. They bind the courts and the prosecuting officers.

Conceding that the mental condition of the appellant is a question of fact, it cannot be denied that there is much testimony against his sanity. Nor can it be said that the testimony of Dr. York might not upon another trial bring about a different result. The attorney charged with the duty of representing the State in this court, in a brief containing very strong language, expresses the opinion that the judgment condemning the appellant to suffer death should not be sustained upon the present record.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*