### ELBERT KIRKSEY v. THE STATE.

No. 983.   Decided March 1, 1911.

Rehearing Denied March 29, 1911.

**1.—Local Option—Elections—Evidence—Ballots—Collateral Attack.**

Under the Act of the Thirtieth Legislature, page 447, a contest over a local option election must be brought by direct proceedings in the District Court, and there was no error in the court's charge on the proper evidence that the local option law was in force in the county of the prosecution, and in not allowing the defendant to show some defect in the ballots at such election, as he could not collaterally attack the validity of such election.

**2.—Same—Sufficiency of the Evidence.**

Where, upon trial of a violation of the local option law, the testimony was conflicting as to the sale, a conviction will not be disturbed.

**3.—Same—Evidence—Detective—Impeaching Witness—Bill of Exceptions—Moral Turpitude.**

Where, upon appeal from a conviction of a violation of the local option law, defendant's bill of exceptions did not show that any time or place was fixed with reference to the rejected evidence involving the credibility of the State's witness, who was a detective, the same could not be considered; and where the question of the witness' moral turpitude, to wit, that he gambled and drank whisky with negroes, had been sufficiently presented to the jury, there was no error in not permitting the defendant to go into the details of these matters. The matter of witness inadvertently making an affidavit was also sufficiently explained by the trial court.

**4.—Same—Newly Discovered Evidence.**

Where, upon appeal from a conviction of a violation of the local option law, the alleged newly discovered evidence could not have affected the result of the trial, and besides there was a want of diligence to secure the same at the trial, there was no error.

**5.—Same—Charge of Court—Definition of Sale.**

Where, upon trial of a violation of the local option law, the court properly defined a sale and the defendant did not request any charge on this question, there was no error.

Appeal from the District Court of Shelby. Tried below before the Hon. Jas. I. Perkins.

Appeal from a conviction of a violation of the local option law; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Anderson & Davis,* for appellant.

*C. E. Lane,* Assistant Attorney-General, for the State.

PRENDERGAST, JUDGE.—The appellant was indicted by the grand jury of Shelby County in February, 1910, for a violation of the prohibition law under an election for that purpose held in September, 1909, at which election it was properly declared carried and in force in said county by the Commissioners' Court in November, 1909. His punishment was fixed at confinement for two years in the penitentiary.

1. On a trial of the cause the appellant sought to have the ballot boxes at said election brought into court and the ballots examined and counted, claiming that there was some defect in the ballot itself showing that such election was invalid and void. The proceedings of the Commissioners' Court of said county were introduced, which were regular and proper, and showed that upon proper petition the Commissioners' Court ordered the election for the county. That in accordance therewith said election was held and a large majority of the votes cast therefor were for prohibition, giving the proper notice of publication and order declaring the result and declaring prohibition carried, and was in force in said county on and after November 6, 1909. The appellant was charged by the indictment with the commission of the offense on or about December 8, 1909. The appellant

also complains of the charge of the court in not submitting to the jury the question of fact to be found by it of whether or not the election was in force in said county, claiming that the court had no right to tell the jury, as it did, that the law was in force in said county on December 8 and 9, 1909, by virtue of the election, and proceedings and orders thereunder.

By the Act of the Thirtieth Legislature, approved May 14, 1907, page 447, among other things, it is provided that any person can contest such election in the District Court of the county where the election is held by suit filed at any time within thirty days after prohibition is declared and so ordered by the Commissioners' Court. The record in this case shows that there was no such contest, or rather, it is not shown there was any such contest. So that there was no error in the action of the court in telling the jury that the law was in force and in refusing to permit the appellant to open the ballot boxes and have the ballots examined for any purpose.

2. The evidence clearly shows that the appellant Elbert Kirksey did in violation of said prohibition, on or about the night of the 8th or 9th of December, 1909, sell a quart of whisky to Charley Jordan, the party to whom the indictment alleges such sale was made. This was shown by the testimony of the said witness Jordan, and by other facts and circumstances supporting him shown in the record. It is true that appellant denied the sale and swore he did not make it. This, however, was a question of fact from all the testimony to be found by the jury and passed upon by the lower court. The jury believing the testimony of the State, and the District Court having refused a new trial, this court is bound thereby, and, therefore, holds that the evidence is amply sufficient to sustain the conviction, and that it did so.

3. While the witness Charley Jordan, to whom the illegal sale was charged to have been made, was upon the stand, on cross-examination, after having been asked by the appellant and testified that he "was employed by certain persons to detect violators of the local option law, that it was a part of his employment, and he found it necessary to indulge in drinking whisky and also in gambling, and that his employer knew at the time that he was employed that he drank and gambled, and that he told him he would have to drink and gamble and do mighty near everything else the rest of them did, and he did not object to doing those things," he was then asked this question by the appellant: "Q. In the pursuit of your occupation, have you ever gambled with minors—school boys?" To which the State objected, and the objection was sustained by the court, the appellant claiming, "We think it goes to the credibility of the witness." The answer of the witness would have been that he had frequently done so. For the refusal of the court to permit this answer the appellant then and there excepted.

Again, on his cross-examination, after he had testified on cross-

examination that he had been indicted for forgery and had been in jail at Longview on that charge, that he had never been indicted for any other felony, but was bound over once to await the action of the grand jury but the grand jury did not find any bill, he was asked this question by the appellant: "You made a complaint against Ed Kennon, didn't you, for selling whisky?" The State objected to further going into this question. The appellant then stated to the court that the purpose of said inquiry was to establish the fact that the witness Jordan had formerly made a complaint against Ed Kennon for the sale of intoxicating liquors, and afterwards, in the presence of John B. Burns, the sheriff of Shelby County, and said Kennon, that he had admitted to and in the presence and hearing of both of said parties that he had made such complaint, and sworn to same, but in so doing that he had sworn a falsehood, and that he never at any time purchased any whisky from the said Kennon. The court refused to allow this bill, or in allowing it qualified it as follows: "I had been privately advised, I think, by defendant's counsel, of what they wanted to prove as to the Ed Kennon complaint, and had advised that it would not be admissible, they making a statement to me of the circumstances under which they could show it was made. My recollection of what the statement of the witness would have been is that the name of Ed Kennon was by mistake or inadvertence of the officer inserted in a blank in one of the complaints he was making, and he was sworn to the complaint and signed it without discovering the mistake, and it would not have been shown that the false statement was wilful or intentional. With this explanation, and referring to the statement of facts for a more full explanation of the other matters set out in the bill, it is allowed."

While the witness was still on the stand, and in answer to cross-interrogatories by the appellant, he testified: "I do not know how many drinks I have taken with Elbert Kirksey, but a good many," it being shown that Elbert Kirksey was a negro. He was then asked this question: "How many negroes in and about Center have you taken social drinks with?" to which the State objected, and the court sustained the objection. The appellant stated that the witness would have answered that he had taken a great many social drinks with negroes in and about Center, and the appellant claiming that said testimony was proper as going to the credibility of the witness Jordan.

These three matters are all presented in one bill of exception, and were allowed by the court with the qualification and explanation shown above. It will be noticed in the statement of these matters that the question to the witness first above presented is, "In pursuit of your occupation, have you ever gambled with minors—school boys?" No time nor place is fixed by the bill of when this occurred, and the bill is insufficient as to that matter on that account. As to the question asked about the complaint against Ed Kennon, and what the witness would have sworn, it will be also noticed that no time is fixed or shown of

when and where this occurred, and it would be inadmissible on that account, but the court in his explanation, which is a part of and in fact makes the bill, shows that to take what was done about the complaint against Ed Kennon and the circumstances under which it was made, and the affidavit thereto, that it clearly would not have shown any such reflection on the witness as to affect his credibility. The same thing as to the matter called for by the question as to how many social drinks the witness had taken with negroes in and about Center, it would have been inadmissible for any purpose, because the time when he did this was not shown.

It has frequently been held by this court that a witness on the stand against the defendant can be compelled to answer and is required to answer of any arrest, indictment, or other prosecution against him for felony, or for such offense as shows his moral turpitude, but in no instance have they permitted the inquiries to go into the details of any such matter before the jury. In this case all of these matters complained of were gone into sufficiently to show that the witness gambled and drank whisky. That he took social drinks of whisky with the appellant, a negro, a good many times, and we hold that it would have been improper for the court to have permitted any further inquiry into the details of these matters.

4. The next ground of complaint is that the court erred in refusing to grant a new trial because of newly-discovered evidence shown by the affidavit attached thereto of R. T. Sanford and Will A. Fults. The affidavit of Sanford is that he lives near Center in Shelby County, Texas; that he was in Center on the 8th or 9th of December, 1909, Wednesday or Thursday night, during the carnival; that on said night he saw the defendant, whom he then knew, and that he approached the defendant and asked him if he had any whisky, to which question defendant replied that he did not have any whisky, and that he was looking for some whisky himself. That about that time someone else spoke to defendant and affiant saw no more of him. That he did not know defendant had been indicted and tried until the day he made the affidavit, March 12, 1910. That he was in reach of the ordinary process of the court, and his testimony can be had on another trial at the next term.

The affidavit of Fults is that he was in Center on Wednesday or Thursday, December 8 or 9, 1909; that he saw the defendant, whom he did not then know, out between the express office and the cotton yard. That defendant was talking to a small man when he first saw him; that affiant and Sanford asked defendant if he knew where they could get some whisky, and he said he did not—that he was looking for whisky himself. This occurred during the carnival in December. That he did not know defendant had been indicted and tried, and that he lives in Shelby County, Texas, and his testimony may be had if a new trial is granted. This affidavit was sworn to March 12, 1910. The bill, complaining of the refusal of the court to grant his motion

for a new trial on account of the discovered evidence shown by these two witnesses was allowed by the court, as follows: "Allowed with the qualification that, notwithstanding this, supplemental motion was filed and presented after defendant's motion for a new trial had been over-ruled and his notice of appeal entered and sentence pronounced, I heard this motion read, and as much because I believed there was no merit in it as because it came too late, I refused to entertain or grant it."

The testimony of the appellant on the trial of the case shows that he did meet Charley Jordan, the State's principal witness, at about the time and place where the State's witness claimed he sold him the bot-tle of whisky, for which he was indicted, and he says: "That is the only time that I ever met Mr. Charley Jordan around about that place, and there were several other white fellows standing around there, but Mr. Jordan was standing right by the far corner of the express office, and we met him first, and he spoke kinder low like he didn't want those other white fellows to hear; I don't know whether those other white fellows were with him or just happened to be there, but he spoke it kinder low like he didn't care whether they heard him or not. I didn't know any of those white fellows except Mr. Charley Jordan." On cross-examination, on this same point, he testified: "We just come around by the First National Bank and come on through by the ex-press office and met up with him there, and there were two more fel-lows in that aisle there; they were ten or twelve feet from Mr. Charley Jordan, maybe a little more. I think Mr. Charley Jordan was walking along and these other fellows were already standing there; these fel-lows were standing there, and Mr. Jordan came on by them and came on to where Henry Giles and I were, and asked in a low tone if we knew where we could get some whisky. I don't suppose those other two men were with Mr. Jordan. . . . Those other two fellows that were out there that night came on and asked us boys if we knew where they could get some whisky. I don't know who those two fel-lows were. Mr. Charley Jordan had done walked on by when these other two fellows asked us if we knew where they could get any whisky."

The witness Charley Jordan had testified that when he first met the appellant it was somewhere on the street near the express office between the express office and the cotton yard, the cotton yard being some distance back from the express office. That they left the place where he first asked him and went out to the cotton yard, and it was at the cotton yard where he delivered the whisky and witness paid for it.

From all this it appears that the appellant knew about these two other persons when he was first indicted and arrested. He shows no diligence whatever in an attempt to find them or to ascertain where they were. Even if he had found them, and they had testified what they claimed they would by their affidavits, if their testimony was ad-

missible at all, it could not and would not have had the effect to in any way change the result of the trial. There was, therefore, no error in the court overruling the motion for a new trial on that ground.

The appellant, in his motion for new trial, claims "the court erred in defining a sale as being a parting with the title and possession of the property, ignoring the fact of ownership, and the agreement necessary to constitute a sale." This is the whole of this ground of the motion. In a bill of exceptions allowed and filed March 11, 1910, after the trial, conviction and sentence, appellant complains of this charge of the court: "No particular formality or form of words is required to constitute a sale; and it may be made without the use of words; the essential ingredients of a sale are simply that the minds of the parties meet and agree, the one to sell and the other to purchase, for an agreed price paid or to be paid, and that the purchaser obtains possession of the property by the act or agency of the seller," and complains that the court should have gone further in this paragraph of the charge, and instructed the jury that in order for it to be a sale it must be a completed transaction, and that in order to constitute a sale, that at the time the purchaser obtains possession of the property, that he paid or agreed to pay therefor. The court, just before this paragraph of the charge complained of, had charged on the subject as follows: "A sale, within the meaning of the law, is the parting with the title and possession of property for an agreed consideration by one party and the acceptance of the property and payment of the agreed price or consideration by the other." The appellant asked no charge whatever on the trial of the cause. This charge of the court complained of is substantially correct, and the court did not err in giving it on the ground complained of by the appellant.

The judgment is affirmed.

*Affirmed.*

[Rehearing denied March 29, 1911.—Reporter.]