### DAN JACKSON v. THE STATE.

No. 4504. Decided June 13, 1917.

Rehearing denied June 29, 1917.

**1.—Murder—Charge of Court—Manslaughter.**

Where, upon trial of murder and conviction of manslaughter, the evidence is sufficient to sustain the conviction, under a proper charge of the court, there is no reversible error.

**2.—Same—Newly Discovered Evidence—Contest—Practice in District Court.**

Where defendant's motion for new trial claimed newly discovered evidence, which the State contested attaching affidavits of witnesses thereto, and defendant filed a motion to strike out the State's contest together with the alleged affidavits, the court correctly overruled the same. as the State had the right to file such contest.

**3.—Same—Affidavit—Motion for New Trial—Newly Discovered Evidence.**

Where defendant's motion for new trial alleged newly discovered evidence, to which the State filed a contest attaching written affidavit of witness, which was sworn to before the district attorney as a notary public, and defendant moved to strike out said contest, without raising the exception that the affidavit was made before said district attorney, and there was no showing in the record whether said affidavit was excluded in the consideration by the court, there was no reversible error; besides, the alleged newly discovered testimony did not come within the scope of the rule, and defendant's attorneys must have known of the same before the trial.

**4.—Same—Discretion of Court—Newly Discovered Testimony—Rule Stated.**

Alleged newly discovered testimony is closely scrutinized and is largely confided to the discretion of the trial court, and there is no error unless such discretion is abused. Following Templeton v. State, 5 Texas Crim. App., 398, and other cases.

**5.—Same—Rule Stated—Newly Discovered Testimony.**

Where the testimony is of such a character as that it must have been known to the counsel for the defendant before the trial, it is in no sense newly discovered evidence. Following Burton v. State, 33 Texas Crim. Rep., 138.

**6.—Same—Rule Stated—Newly Discovered Evidence.**

Where a witness is interviewed by defendant's counsel upon one phase of the case only and is not put upon the stand, his testimony upon another phase is not newly discovered. Following Williams v. State, 45 S. W. Rep., 572.

**7.—Same—Rule Stated—Newly Discovered Evidence.**

Where it appears that the proposed witness had been subpoenaed in the case, but was not put upon the stand to testify, the testimony is not newly discovered. Following Powell v. State, 36 Texas Crim. Rep., 377, and other cases.

**8.—Same—Newly Discovered Evidence—Affidavit—Attorney and Client.**

Where defendant's motion for new trial alleged newly discovered evidence and the State contested same attaching affidavit thereto, there was no error of the court in overruling a motion to strike out said contest, in the absence of specific exceptions to the affidavit on the ground that it was taken before the State's attorney as notary public, or objection to the introduction of such affidavit in evidence, if it was offered; besides, the said alleged testimony does not come under the rule of newly discovered evidence, as defendant and his counsel must or could have known of same before trial. Following Waggoner v. State, 190 S. W. Rep., 493.

Appeal from the District Court of Fannin. Tried below before the Hon. Ben H. Denton.

Appeal from a conviction of manslaughter; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Cunningham & McMahon,* for appellant.—On question of affidavit before attorney of the party: Maples v. State, 60 Texas Crim. Rep., 169; Floyd v. Rice, 28 Texas, 341; Blumm v. Jones, 86 id., 492; Testard v. Butler, 48 S. W. Rep., 753.

*E. B. Hendricks,* Assistant Attorney General, for the State.

PRENDERGAST, JUDGE.—Upon an indictment and trial for murder appellant was found guilty of manslaughter and his punishment assessed at five years imprisonment in the penitentiary.

Appellant and deceased, Ben Carter, were negroes with families and lived several miles apart. Appellant had a daughter Effie, about seventeen years old. Deceased had a son Clarence, about grown. Clarence had been courting Effie and waited on her from week to week. They had agreed to be married, or at least Clarence had asked appellant for

her. Appellant had no particular objection to Clarence, but it seemed Effie had another beau and the indications are he preferred the other beau to Clarence, and while he did not decline to let Clarence have her, he deferred the marriage.

Appellant left his home one morning, went several miles away on some business and did not return until after night between 9 and 10 o'clock. That morning Clarence got a buggy, went to the school where Effie was attending, got her, they were married, and he took her to his father's. That night when appellant returned home, his wife told him that Clarence had taken Effie, and she understood that they had married. Appellant, thereupon, late at night, got on his horse, took his shotgun, loaded it and went the several miles to deceased's, reaching there about 1:30 at night. Deceased and all his family, including Effie and Clarence, were in bed asleep. Appellant hailed and woke them all up. Deceased's house had three rooms to it, two adjoining and a kitchen attached to one of them. Clarence and Effie were in one room; the deceased, his wife and his other children were in the other room. There was a door from each room, about the center of it, to the outside and a door in the partition between the two rooms. When appellant woke deceased and his family, deceased got up, lit a light and went to the front door of the room he occupied and called to know who it was. Appellant told him, and demanded to know if his daughter Effie was there and demanded that she come out and that deceased have her to come out. Deceased called to her and told her that her father wanted her. She had heard his call for her but did not go to the door or out to him. The testimony up to this point seems to be uncontradicted. The State's testimony by deceased's wife and his two daughters and Clarence was all to the effect that appellant began cursing and abusing deceased and his family, denouncing their act of stealing his daughter and making serious threats. Appellant in effect denies this and claims that deceased was doing the cursing and abusing him. Who was right in this matter, was a question for the jury. Deceased's wife and his said children testified that without any provocation appellant then shot and killed deceased. That he shot and killed him is unquestioned. The deceased's family further testified, all of them, that appellant shot deceased and that then Clarence got the gun in the house and at once shot appellant, striking him in the jaw and side of the neck, it seems with small shot; at least the evidence does not show that appellant's wound was serious. Appellant claims that he was shot first and that he then shot.

The court in a proper charge submitted all of the issues raised by the testimony, including self-defense and manslaughter. There is no complaint at all of the court's charge.

The sole question is based on the court's refusal to give appellant a new trial on what he claimed was newly discovered testimony. The claimed newly discovered testimony was that of Ed Brent and appellant's daughter Effie. Their affidavits are attached to the motion for

a new trial. The State contested the motion by proper pleadings and also attached the affidavit of Effie and of Brent to its contest. This matter is not presented by any bill of exceptions.

Brent's affidavit is to the effect that he was a deputy sheriff of said county and in his official capacity went to deceased's place soon after he was killed, saw his body and the wound that caused his death. "That the wound on deceased was on his side and extended almost across his body and the same size up and down and was considerably larger than the wound on defendant."

Effie's affidavit was to the effect "that her husband shot her father before her father shot Ben Carter; that she has not before making this affidavit made this statement to anybody except her mother; that she denied this statement to the attorney for her father on the day he was tried for killing the said Ben Carter; that she made a contrary statement the morning after the killing but that such statement was made at the instance and under the direction and orders of her husband, Clarence Carter."

In the State's contest it attached her affidavit made before the then district attorney as a notary public to the effect that her father "told me to come out there, and my father cursed at me and told me to come on, and then the next that I heard was the shot, and then Clarence Carter shot." In contradiction of her affidavit attached by appellant to his motion, the State three days later procured her affidavit to this effect, "that she can not say which one shot first, Clarence Carter or her father, Ben Jackson"; that the said affidavit she made which was attached to appellant's motion "was not explained to her and that she did not understand the contents of same; that it was not explained to her and that her mother, Tishie Jackson, told me to sign same and showed me where to sign my name." Appellant claims that this affidavit from her was obtained by the special prosecuting attorney, and criticises his manner of getting it.

The affidavits and record clearly show that when this latter affidavit of Effie was procured it was written by the said special prosecuting attorney, and that he and the deputy sheriff went to where the witness was, and the deputy sheriff's affidavit shows that when this attorney was talking to her she stated twice that her husband shot first; "that she finally told him that she didn't know which shot first"; that he then sent the deputy sheriff two and a half miles away for the justice of the peace; and that he went and got the justice of the peace and brought him back; and that Effie swore to said affidavit before the justice of the peace. The attorney's affidavits are to the effect that before the trial Effie was in attendance but that she then stated to them that appellant shot first and she would not say that her husband, Clarence, shot first. They do show in their affidavits, however, that Effie's mother had told them before that, that Effie had told her that Carter shot before appellant did. The affidavit of Mr. Brent, the deputy sheriff, further shows that he had been subpoenaed and attended

as a witness at the instance of appellant; that he was present and sworn in with the other witnesses when the case went to trial; that he heard a part of the testimony but that while the trial was going on he went out of the courthouse and before he returned the testimony was concluded. He was not called for as a witness by appellant after the trial began. They claimed that they had had him subpoenaed for the purpose of proving that Clarence Carter had stated to him that he had a gun in the house at the time of the shooting; that they were informed that Clarence would deny that on the trial and that when he swore that he had the gun and that he had shot appellant, as shown above, they did not introduce the deputy sheriff.

Appellant made a motion to strike out the State's contest of his motion and the alleged affidavits of Effie Carter attached by the State to its contest. The court correctly overruled this. The State had the right to file a contest and the court should not have struck it out. A different question might be presented if appellant had made a motion to strike out the said affidavit of Effie sworn to before the district attorney as a notary public. For aught that appears, the court may have in passing on the matter excluded that affidavit from his consideration. Even if he did not, Effie in the affidavit attached by the appellant swore that she had made a statement (doubtless this one) the next day after the killing to the same effect. Hence, no injury could have occurred to appellant on that score.

This court has at all times and in all cases held, as stated by Judge White in his Ann. C. C. P., sec. 1149, that an application for a new trial on the ground of claimed newly discovered testimony "is closely scrutinized and is largely confided to the discretion of the trial court; and the disposition there made of it will not be disturbed on appeal unless it be apparent that the trial court abused its discretion to the prejudice of appellant. Burnes v. State, 12 Texas Crim. App., 270; Bell v. State, 1 Texas Crim. App., 598; Templeton v. State, 5 Texas Crim. App., 398; Shaw v. State, 27 Texas Crim. App., 750; West v. State, 2 Texas Crim. App., 209; Terry v. State, 3 Texas Crim. App., 236." This principle and these cases have been cited and approved in many later cases. One only need be cited. Gray v. State, 65 Texas Crim. Rep., 206.

The claimed testimony of neither Brent nor Effie Carter could have been newly discovered under the terms of the law. The record clearly shows that the appellant's attorneys before the trial knew that Effie Carter had stated to her mother that her husband shot first. The appellant knew that she was present on the night of the killing and must have seen and heard all that occurred. The law is, as stated by Judge White in said section, that "Where the testimony is of such a character as that it must have been known to the counsel for the defendant before the trial, it is in no sense newly discovered evidence. Burton v. State, 33 Texas Crim. Rep., 138. Where the witness was interviewed by defendant's counsel upon one phase of the case only

and was not put upon the stand, his testimony upon another phase is not newly discovered. Williams v. State, 45 S. W. Rep., 572. Where it appeared that the proposed witness had been subpoenaed in the case but was not put upon the stand to testify, the testimony was not newly discovered. Powell v. State, 36 Texas Crim. Rep., 377; Halliburton v. State, 34 Texas Crim. Rep., 410." This statement of the law by Judge White, and said decisions, have all the time been cited, approved and adhered to. It is needless to collate the later cases. But see Stewart v. State, 76 Texas Crim. Rep., 54; Henson v. State, 74 Texas Crim. Rep.; 282; Black v. State, 71 Texas Crim. Rep., 625.

The court's action in refusing appellant a new trial was correct under the law and record in this cause.

The judgment is affirmed.

*Affirmed.*

ON REHEARING.

June 29, 1917.

PRENDERGAST, Judge.—As stated in the original opinion, the sole question in this case is whether or not the court erred in refusing to grant the appellant a new trial on what he claimed was newly discovered evidence.

What the record showed on this subject was fully and accurately stated in the original opinion. It is unnecessary to here again repeat all that.

The statute (art. 841, C. C. P.) provides: "The State may take issue with the defendant upon the truth of the causes set forth in the motion for a new trial; and, in such case, the judge shall hear evidence, by affidavit or otherwise, and determine the issue." This statute, without any doubt, expressly, as it stated, authorized the State to take issue with defendant upon the truth of his claimed newly discovered testimony. The State did this in literal compliance with the statute. The State's answer to the appellant's claim of newly discovered testimony contesting this was as follows: "Now comes the State by her district attorney and takes issue with the defendant upon the truth of the causes set forth in his motion for a new trial in the above entitled and numbered cause, and says the causes therein alleged are not true, and this he is ready to verify. A. L. Robbins, District Attorney.

"The State hereto attaches exhibits "A," "B" and "C," affidavits of Effie Carter and Ed Brent, which is made a part hereof. A. L. Robbins, Dist. Attorney, J. M. Baldwin, Attorney for State." The contents of these affidavits is accurately given in the original opinion.

The appellant made this motion: "Now comes the defendant in' the above cause and files this contest and moves the court to strike out the private prosecutor's contest of defendant's motion for new trial, and the alleged affidavits of Effie Carter." Then follows certain alleged reasons for striking out the State's contest and the affidavits attached thereto as said exhibits.

The court upon hearing and considering this motion made this order: "This day came on to be heard the defendant's motion to strike out and not consider the contest of State and affidavits attached thereto filed in this cause in contest to defendant's amended motion for new trial, and the court after hearing said motion is of the opinion that same should be overruled and the said motion is hereby overruled."

There can be no question but that the State had the right, and it was its duty to have, as it did, contested appellant's motion for a new trial and the causes claimed therefor; and the court could not have legally done otherwise than it did,—overrule his motion to strike out that contest. Then when the court heard the motion for new trial and the State's contest, if the State had then offered in evidence the affidavit of Effie Carter, sworn to before the district attorney as a notary public, he should have objected thereto and shown that he did by proper bill of exceptions. He did not do this. The record does not disclose that he then objected to the introduction of that affidavit in evidence if it was offered, nor to the court considering it; but even if he had, as shown in the original opinion, he could not have been injured thereby because Effie Carter, in her affidavit which appellant attached to his motion for a new trial, expressly shows that wherein she then stated that her husband, Clarence, shot first, "that she made a contrary statement the morning after the killing." This could have referred solely to the affidavit that she had made before the district attorney that appellant shot deceased first.

But in addition to all of this, the record clearly and distinctly shows that neither the claimed testimony of Effie nor of Mr. Brent was, or could have been, newly discovered. The record distinctly shows that appellant positively knew that his daughter Effie was present at the time he killed deceased and when Clarence Carter shot him. It shows that the State had not subpoenaed Effie as its witness and that when he found that out he, himself, had her subpoenaed and in attendance on the court on the trial of the case. It also positively shows that Effie had told her mother, appellant's wife, prior to that time that Clarence Carter shot first. Appellant's attorneys, by their affidavits, show that they knew this. Appellant himself is bound to have known it. The record also clearly and distinctly shows that the location and extent of the wound on the deceased, inflicted by appellant and which killed deceased, could not have been newly discovered testimony. There can be no doubt but that many witnesses could have been obtained by the slightest diligence to show the location and extent of this wound. So far as the testimony of Deputy Sheriff Brent on the subject is concerned, the record positively shows that the appellant had Brent subpoenaed as his witness; that that he attended the trial as such; was sworn as a witness for him at the time the trial began, and that the appellant knew all of this. He did not call him as a witness, and even if he was temporarily absent out of the courtroom when the trial was concluded he says that he made no motion for a continuance or postponement to get him

and made no attempt whatever to then get him or introduce him as a witness. We here repeat what we quoted from Judge White in the original opinion: "Where the testimony is of such a character as that it must have been known to the counsel for the defendant before the trial, it is in no sense newly discovered evidence. Burton v. State, 33 Texas Crim. Rep., 138. Where the witness was interviewed by defendant's counsel upon one phase of the case only and was not put upon the stand, his testimony upon another phase is not newly discovered. Williams v. State, 5 S. W. Rep., 572. Where it appeared that the proposed witness had been subpoenaed in the case but was not put upon the stand to testify, the testimony was not newly discovered. Powell v. State, 36 Texas Crim. Rep., 377; Halliburton. v. State, 34 Texas Crim. Rep., 410."

Mr. Branch, in his Ann. P. C., page 127, correctly states the law thus: "Where it appears that defendant or his counsel knew of the alleged new testimony at or before the trial, or that defendant knew that the proposed new witness was present when the transaction occurred, or where the alleged new testimony is of such a character as that defendant must necessarily have known of its existence prior to the trial, and the trial court in the exercise of its sound discretion has refused a new trial, the judgment will not be reversed to permit him to take advantage of his own negligence and obtain a new trial to get testimony which he should and could have had at the trial." He cites in support of this text some forty-two cases, all of which are in point. See also Waggoner v. State, 190 S. W. Rep., 495.

There can be no question but that under the law, and what is plainly disclosed by this record, the court's action in refusing a new trial was correct.

The motion is overruled.

*Overruled.*