## JOHN WILLIAMS V. THE STATE.

No. 15012.   Delivered November 16 1932.
Rehearing Denied December 13, 1933.
Reported in 66 S. W. (2d) 306.

32

The opinion states the case.

*James O. Cade,* of Amarillo, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for murder; punishment, fifteen years in the penitentiary.

Appellant brings forward six bills of exception, all of which have been examined. Only two of said bills are briefed by counsel representing appellant on this appeal. Appellant was living in a house in Amarillo, Texas, in which also the wife of deceased was staying working for appellant as housekeeper. Said wife had been separated from deceased for a year and a half. Deceased with their five small children lived near Clarendon in Donley county. Mrs. Eubanks and her two children were living in the house with deceased. A few days before this homicide appellant took the wife of deceased down to visit her children. Deceased was not at home. According to Mrs. Eubanks, there was a good deal of cursing and profanity indulged in by appellant and the wife of deceased, in the presence of said children. Mrs. Eubanks said she remonstrated with them. Upon the return home of deceased she told him of said conduct. She testified that on the day of this killing deceased took a load of produce to Amarillo and engaged in peddling it out. She went with him and spent the day at his mother's home. Late that afternoon deceased took her and some others in his truck

and went by the home of appellant. Here he seems to have gone to the door and asked to see appellant, and when the latter came out deceased reproved him for his cursing in the presence of the children and warned him not to do it again. According to practically all the testimony, appellant turned and went into the house and got a pistol. Deceased had turned back, and when appellant got to the door deceased had reached a point near the car. Appellant fired at deceased five times, killing him. Appellant took the position upon this trial,—and apparently made statements in accordance with same at the time of the killing,—that deceased made movements as though to draw a pistol, and that appellant believed he had one, and had gotten his friends and come by there for the purpose of assaulting and perhaps killing appellant.

Appellant was defended originally as well as later by reputable lawyers who have been practicing attorneys at the Amarillo bar for many years. He was convicted on October 2, 1931, and said attorneys filed a motion for new trial on October 3rd. On October 13th appellant, through entirely different counsel, filed an amended motion for new trial setting up for the first time that since the trial new evidence had been discovered showing that he was insane at the time of this killing, and had been so for many years. Seven affidavits were attached to said motion, four of which were sworn to before appellant's present attorney as notary. The mother, brother, sister and a nephew of appellant by marriage, made four of said affidavits. It is shown that the mother and said nephew were present at the trial, were sworn as defense witnesses, but not used. Three other affidavits were appended, including one by a doctor shown by testimony to be an eye, ear, throat and nose specialist. Said doctor as well as all the makers of the affidavits, save the brother and sister, lived in the city of the trial, and no reason is shown or disclosed for not having them present. When the motion was presented, in addition to the affidavits referred to, the doctor mentioned was examined orally for the defense, as was also another doctor who had testified for the defense on the trial of the case, and is shown to have then said nothing regarding appellant's insanity. In fact, said last mentioned doctor stated on the hearing of the motion that when he examined appellant prior to the trial it did not occur to him that he was insane. The state introduced upon this hearing the city physician of Amarillo, a practitioner of five years standing, who testified that he gave appellant an examination and applied the usual tests, but found nothing indicating insanity, and that in his opinion appellant was sane. The bill of excep-

tion bringing forward this testimony, including the affidavits, is qualified by the trial court,—whose discretion in refusing the motion for new trial must appear to this court to have been abused. As explanatory, the court states in said qualification that neither the appearance, conduct nor the testimony of appellant on the trial indicated insanity; that appellant promptly and coherently answered the questions propounded and acted like an ordinary witness. The trial judge further refers to the fact that not until the amended motion for new trial was there any suggestion of insanity. In his qualification the court calls attention to the character of counsel originally representing appellant as diligent and able attorneys.

The fact that the mother and nephew of appellant were witnesses and present at the trial, and that one of the two expert witnesses, whose affidavit and testimony were offered, testified on the trial of appellant that he had examined him before, and he had gone no further in his testimony, as given on the trial, than to say that appellant's condition "would tend to make him cross and irritable"; also that all of said affiants, save appellant's brother and sister, lived in the city where the homicide occurred, and where appellant and his counsel lived and the trial took place, leads us to conclude that there appears no abuse of the court's discretion in the refusal of the motion for new trial. Half a hundred cases are cited in Vernon's Annotated C. C. P., art. 753, among the notes in subdivision 6, supporting the proposition that the accused who seeks a new trial on the ground of newly discovered evidence, must satisfy the trial court in regard to each of four essentials set out. By statutory enactment such an application is governed by the same rules as in civil cases, and the action of the trial court will not be revised save it be apparent that the court's discretion has been abused to the hurt of the accused.

Neither of appellant's counsel who represented him in the preparation and trial of this case, made affidavit or testified on the hearing of the motion. We regard this as a circumstance entitled to weight and great consideration on the part of the trial court, who himself must have been interested in finding out what had come to the knowledge of said attorneys in the preparation and trial of the case in conversations with the witnesses who were present at the trial. In Burton v. State, 33 Texas Crim. Rep., 138, this court said that evidence which could have been known to counsel for the accused before the trial, is not newly discovered. In many cases it has been held that when it appears that the witnesses who propose to give the testimony claimed as newly discovered, had been sub-

poenaed or were present at the trial, even though not used, their testimony will not be deemed newly discovered. See Halliburton v. State, 34 Texas Crim. Rep., 410; Powell v. State, 36 Texas Crim. Rep., 377; Stewart v. State, 76 Texas Crim. Rep., 54; Jackson v. State, 81 Texas Crim. Rep., 601; Bowman v. State, 98 Texas Crim. Rep., 378. In Cooper v. State, 58 Texas Crim. Rep., 598, this court held that when witnesses are present and the record discloses that no effort was made to ascertain their knowledge of matters alleged to be newly discovered, a new trial would be properly denied. See Hill v. State, 96 Texas Crim. Rep., 364; Behrens v. State, 99 Texas Crim. Rep., 56. In Williams v. State, 83 Texas Crim. Rep., 26, we held that when all the witnesses to newly discovered evidence were accessible, and their testimony could have been obtained on the trial, a new trial was properly refused.

It might be illuminating to set out all the testimony given by appellant on this trial which is in the record before us as demonstrating his intelligence, mentality, comprehension of the facts and issues involved, etc. So also it might make to some degree evident that the trial court was warranted in his conclusion in refusing the new trial, to set out the testimony of the two expert witnesses offered by appellant. We do quote from the testimony of the doctor who admitted that he had testified on the main trial of this appellant, as follows:

"It didn't occur to me at the time I examined him that he was insane, but conditions that existed and histories I have checked up lead me to believe that. Do you want me to mention one?

"Q. Anything you want to say. A. You realize that this is an ex-service man, and he has been drawing compensation from the Government. My understanding is that he has gone from one regional office jurisdiction to another, not staying at one place long enough to have his case adjudicated and get it settled, don't you see? That is the history I get out of it."

We quote from the testimony of the eye, ear, throat and nose specialist as given orally before the court upon cross-examination by state's counsel:

"Q. Did you ever suggest to any of his friends that he should be in the asylum? A. No, but I suggested to him that he had better get in a hospital and get treated; that any violent exercise on his part, or any undue excitement or commotion, might unsettle his mind.

"Q. His mind was already unsettled wasn't it? A. Yes, but there are as many forms of insanity as there are human beings.

"Q. Now we are getting pretty close together. In other words, there is lots of different types of insanity? A. Certainly, an emotional insanity may run in a status quo of apparent sanity only to become dethroned in a short space of time for the reason the moral fibre is not sufficient to retain its stability."

We set these out in order that the correctness of the trial court's conclusion that testimony such as this put before the jury would not be apt to produce a different result. The doctor who testified on the trial and made no reference to any insanity on the part of appellant, mentions in the above quotation as his reasons for now concluding appellant insane, that he has learned that he went from one regional office to another, not staying at any place long enough to have his case adjudicated, apparently as supporting his conclusion that appellant is insane. We quote from the testimony of the other physician as showing why the trial court was justified in not believing that testimony such as this would be apt to greatly influence the jury. Just what the witness meant by emotional insanity, or a status quo of apparent sanity, or the moral fibre being without stability, is not quite clear from a legal standpoint, but does serve to illustrate the ease with which erroneus conclusions may be reached regarding that character of insanity necessary of proof in order to evade the consequences of crime.

We think there is nothing in appellant's objection to the testimony of the city physician given upon the hearing of the motion for new trial, objected to on the ground that the truth or falsity of the proposition of insanity vel non, was not for the trial court. One of the issues before the trial court and upon which appellant assumed the burden of satisfying said court, was that the testimony offered would likely bring about a different result. We think the court not without authority to hear the testimony of said city physician.

We recognize that in cases where the alleged newly discovered evidence is for the purpose of showing insanity, the rule as to the effect of the prior knowledge of the accused of such testimony, is held not applicable,—and we have purposely avoided announcing any adverse holding herein based on the proposition that appellant himself must have known all the things involved in said newly discovered testimony. We have no quarrel with the cases cited by appellant in his brief, and think each of them correct on the facts before the court, but we have here no case parallel with any of them. There is not even any dispute of the fact that at least three of the witnesses proffering newly discovered evidence, were present at the trial.

The others were interested relatives or friends necessarily cognizant of the fact that the trial was being had as well as the facts now set out in their affidavits. Insanity as a defense is no new discovery, but is one of the best understood defenses. Relatives and friends of this appellant were not ignorant or uninformed. His counsel were able and versed in the law.

Finding ourselves unable to conclude that the discretion of th trial court in the refusal of the motion for new trial has been in any way abused, the judgment will be affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—We said in our original opinion that the state introduced as a witness upon the hearing of the motion for new trial a physician of *"thirty-five* years standing." Our attention has been called to an inaccuracy in the statement. We should have said of *"five* years standing." The original opinion has been corrected accordingly.

The motion for rehearing is predicated upon two propositions advanced by appellant, and stated by him as follows: (a) "That evidence of insanity produced for the first time in a motion for new trial requires the granting of a new trial." (b) "That where the issue of insanity definitely appears in a case for the first time upon motion for new trial that the trial court has no discretion but must grant a new trial."

We think the cases cited by appellant do not support his propositions when so broadly stated. An examination of the authorities, does however, make it quite apparent that in such cases, as in all others, what is said by the court must be construed in the light of the facts in the particular case. In the very nature of things, when insanity is an issue the general rule as to diligence regarding claimed newly discovered evidence should not be as rigidly enforced as in other cases. Generally, both appellant and his attorney must show absence of knowledge before the trial of the evidence claimed to be newly discovered, and that lack of such knowledge was not for failure to exercise reasonable diligence. As has been said many times, if accused is of unsound mind the law will not and should not hold *him* to the same diligence as in cases where insanity is not an issue, and in that respect the rule has been relaxed. Many cases have been examined in the consideration of the motion for rehearing. Most of them appear to fall in certain well defined groups, viz: (a) Where some evidence was introduced on the trial which tended to show that accused was of unsound mind, and no diligence on the part of *accused* towards

newly discovered evidence was shown, but the attorney who represented him at the trial is shown to have used reasonable diligence. Illustrative, see Schuessler v. State, 19 Texas App., 472; Rowden v. State, 112 Texas Crim. Rep., 655, 18 S. W. (2d) 170. (b) Where accused was not represented by counsel on his trial, and the showing of insanity was first made upon motion for new trial predicated on newly discovered evidence. Illustrative, see George v. State, 114 Texas Crim. Rep., 458, 26 S. W. (2d) 249; Warren v. State, 114 Texas Crim. Rep., 207, 24 S. W. (2d) 1090. (c) Where the facts incident to the offense as developed on the trial strongly suggest that accused was of unsound mind, and the evidence produced on motion for new trial is so cogent on the issue of insanity as to almost conclusively establish it. Illustrative, see Horhouse v. State, 50 S. W., 361; Walker v. State, 86 Texas Crim. Rep., 441, 216 S. W., 1085; Lindsey v. State, 97 Texas Crim. Rep., 300, 260 S. W., 862; Hill v. State, 53 S. W., 845. The case of Rich v. State, 115 Texas Crim. Rep., 386, 28 S. W. (2d) 802, falls partly in both class (a) and (c).

It would extend this opinion to unnecessary length to review the facts of the particular cases, but an examination of Walker v. State (supra), Lindsey v. State (supra), and George v. State (supra), upon which appellant appears to chiefly rely will reveal facts, in the light of which, the disposition of those cases and the language used in the opinions may be well understood, and which to our minds distinguish them from the present case in many particulars.

In this case there was no suggestion or hint at the issue of insanity upon the trial. From appellant's standpoint the case went to the jury upon the clear-cut issue of self-defense, supported by the testimony of appellant, which was clearly and intelligently given, as shown by the statement of facts before this court, and as vouched for by the trial court in his qualification to bill of exception number six, wherein he says:

"The defendant testified as a witness in his own behalf in his trial. (See pp. 60 to 74 S. F.). Neither his appearance, conduct nor testimony indicated to me that he was not sane. He promptly and coherently answered the questions propounded to him by his counsel and the district attorney, and generally behaved about as the average witness. No issue or intimation of insanity was raised in the trial nor at any time before presenting the motion for new trial."

Appellant was not without counsel upon his trial. He was represented by attorneys whom the court says were apparently diligent and able in presenting appellant's defense. The parties

whose affidavits were offered in evidence on the issue of insanity, as well as the witnesses who testified orally upon hearing of the motion for new trial, say they never before the trial told the attorneys then representing appellant about the things set out in the affidavits and testified to on the hearing. The attorneys who represented appellant on the trial did not represent him in presenting the motion for new trial; neither by their affidavit nor testimony was the trial court informed that they had no knowledge before the trial from any source of the facts upon which newly discovered evidence as to insanity is predicated, nor negativing that they had information which if pursued with reasonable diligence would have discovered the matters now relied on as newly discovered evidence. As a part of the qualification to bill of exception number six the trial court says that counsel who represented appellant on the trial:

"* * * were apparently diligent and able in presenting the defense of the defendant, and there is nothing to indicate that they would not have carefully considered any suggestion or intimation of insanity of the defendant had it been made to them before or during the trial."

Counsel now representing appellant urges that the foregoing certificate from the trial judge should be regarded by us as supplying the affidavits or testimony of the former attorneys upon the points mentioned. We are not able to so regard it. Bill of exception number six contains the affidavits of the claimed newly discovered witnesses—some of whom were present at the trial—and also contains the oral testimony heard when the motion for new trial was presented. Presumably this court is in possession of all the information which the record furnished the trial judge. It will be noted that he does not certify that no suggestion or intimation of insanity was made to former counsel before or during the trial, but only that if such suggestion or intimation had been made said counsel would have given it "consideration." In a prosecution for murder the two defenses of self-defense and insanity, or of self-defense and alibi may be interposed, yet it is well understood that in practice where the two are urged, the one weakens the other. By way of illustration; in the exercise of their best judgment, counsel might urge the defense of alibi, or self-defense, and omit raising the issue of insanity although having knowledge of facts which would raise it, believing the interest of their client could be better served by not confusing the issues, and yet, the knowledge or information regarding the issue of insanity be given the most careful consideration, but be rejected as not appealing to their judgment as strongly as some

other defense. It is impossible for us to know what happened in the present case because counsel who represented appellant on his trial were not called upon to inform the trial court or this court by affidavit or evidence on hearing of the motion what the facts were regarding the matter under consideration. Even in this character of case, under the facts presented by the record, the silence of former counsel as to knowledge or lack of knowledge on the question of insanity must be regarded as a failure to show diligence in respect to that issue; especially is this true where no reason is assigned for a failure to produce the affidavits or evidence of said attorneys.

If there be expressions in some of the opinions in cases already referred to which would lead to the conclusion that where a new trial is sought for claimed newly discovered evidence on the issue of insanity, it is unnecessary to show any diligence, and that the court had no discretion in the matter, such impression should have been corrected by the following language in Skotnick v. State, 43 S. W. (2d) 602:

"It is the rule that, where the defense is insanity, the requirement of diligence as to newly discovered evidence is not as strict as in other instances, *but the determination of this question depends upon the facts of each case.* Rich v. State, 115 Texas Crim. Rep., 386, 28 S. W. (2d) 802. *We think this record shows a want of exercise of any diligence to secure testimony touching insanity.* It may be added that we are of the opinion it is clear that the proposed testimony which is alleged to be newly discovered would not likely change the result if a new trial should be granted."

After referring to the eight witnesses who either made affidavits or testified on the hearing of the motion, the court in his qualification to bill of exception number six says:

"* * * the uniform failure of all of said eight witnesses to state to counsel for the defendant any fact concerning defendant's insanity, if any, until after his trial and conviction, having clearly appeared upon the hearing of the said motion for new trial, were considered by the court as materially aiding and determining what weight should be given to their testimony of their opinions of the mentality of the defendant, and such circumstances were considered adversely to said motion; and it further appearing that another trial would very probably result in another conviction of the defendant for murder, the motion was, therefore, overruled."

The court having heard the witnesses who gave oral testimony when the motion was submitted, and having considered the affidavits, reached the conclusion stated in the qualification.

Where a new trial is sought upon the ground of newly discovered evidence it is required, among other things, that the trial court be satisfied that upon another trial probably a different result would be reached. The trial court's opinion is persuasive in aiding this court to determine whether there was an abuse of judicial discretion which must be exercised by the trial judge in this character of case the same as in others under similar circumstances.

Believing the case was properly disposed of originally, the motion for rehearing is overruled.

*Overruled.*