## ROSCOE GIBSON v. STATE

No. 34,525. April 25, 1962
Motion for Rehearing Overruled June 13, 1962

*Desmond E. Gay,* (Court Appointed), *Charles W. Gill,* Houston, on appeal only, for appellant.

*Frank Briscoe,* District Attorney, *Carl E. F. Dally, Neil McKay,* Assistants District Attorney, Houston, and *Leon Douglas,* State's Attorney, Austin, for the state.

DICE, Judge.

The offense is rape; the punishment, death.

The prosecutrix, nine years of age and the eldest of six children, lived with her family in the City of Houston. The state's proof shows that on the night of January 25, 1961, the prosecutrix and two younger brothers were sleeping in the same bedroom. Sometime before midnight appellant entered the house through a back window and carried the prosecutrix from the house in his arms. When told by the prosecutrix to take her home appellant replied that if she screamed he was going to kill her. Appellant then took the prosecutrix to a house several blocks away where he had a room. He first tied the prosecutrix to a back screen door while he went to the front door and was admitted by his landlady. He then returned and carried the prosecutrix inside the house to his room and put her on a bed. The prosecutrix testified that appellant then took off her panties, got on top of her and "put his peanut patty in my pie * * *" which terms she stated meant a man's male parts and the private parts of a female. She testified that he committed such act more than one time, that "it hurt" and in addition to such sexual act appellant committed an act of oral sodomy upon her. She stated that when she got up from the bed appellant choked and slapped her and that after they remained in the room "until morning" appellant walked with her to her home. The proof shows that the prosecutrix returned to her home around 4 A.M. at which time she had blood on her panties and pajamas. After reporting to her parents what had happened she was taken to Jefferson Davis Hospital for examination and treatment where she remained for three days. Dr. Charles A. Baumgardt testified that he made an exterior examination of the prosecutrix's female parts as well as a further examination which was carried out under anesthesia and surgery. The doctor testified that the examination revealed four bruises on the right side of the "neck of the genitae"; that the entire vagina was bleeding and red; the lining of the vagina was red and had scratches and abrasions; that there was a laceration extending 2.5 centimeters above the hymenal ring into the vagina, a laceration through the hymenal ring in the back part of the vagina, extending down through the tissue. The doctor testified that in his opinion from such examination there was no question but that some foreign object did penetrate the vagina and that the extent of the penetration was "all the way into the vagina". The proof further shows that in the investigation which ensued after the prosecutrix returned to her home the appellant was found by the officers hid under the floor of the house where he resided. Following his arrest, appellant, after being duly warned, made and signed a writ-

ten confession which was introduced in evidence by the state without objection in which he admitted taking the prosecutrix from her home on the night in question and committing the criminal assault upon her.

Appellant did not testify or offer any evidence in his behalf.

Appellant's sole contention on appeal is that the court erred in overruling his amended motion for new trial based upon newly discovered evidence.

In the motion appellant alleged that since the trial, testimony material to him had been discovered which would show that he was a person of unsound mind and did not know the difference between right and wrong at the time the alleged offense was committed.

Appellant alleged that such testimony would be provided by the witnesses Mrs. Ella Stratton and Mrs. Bernice Hayes who the record reflects were his mother and sister. It was alleged that although appellant's court-appointed attorney used reasonable diligence in preparing the case for trial, the witnesses, for reasons unknown, failed to reveal the new testimony concerning insanity but that since the trial, appellant's mother, Mrs. Stratton had employed his present counsel, Hon. Charles W. Gill, Jr., and imparted such information to him.

The motion was not sworn to by appellant or his counsel but had attached thereto the affidavits of the two witnesses, Mrs. Stratton and Mrs. Hayes, in which they swore that appellant was of unsound mind and did not know the difference between right and wrong.

While such a motion is insufficient, we have, in view of the penalty assessed appellant, carefully considered the court's action in overruling the motion.

A review of the record reflects that appellant was represented at the trial by the Hon. Desmond E. Gay, a member of the Harris County Bar, with experience in the trial of criminal cases, who was appointed by the court to represent him.

No issue of insanity was raised in the trial of the case.

Attorney Gay, called as a witness by appellant, testified on the hearing of the motion for new trial that he was afforded

ample opportunity to investigate the case; and that in his investigation, he contacted appellant's mother and sister, both of whom stated that they knew nothing about the case which could be of assistance to him. He further stated that he received "not one bit of cooperation from them" and that when he asked them if anything was wrong with appellant they stated "well he had been in the penitentiary and that is all they know about it."

The record shows that neither the appellant's mother, nor sister attended the trial but after return of the verdict his mother employed present counsel to investigate the matter of jury misconduct as a basis for new trial. After it was determined that no jury misconduct occurred she then informed counsel that in her opinion appellant was of unsound mind.

At the hearing Mrs. Stratton testified that she did not assist at the trial because she thought they would put appellant "away" and did not think he would receive the death penalty. His sister, Mrs. Hayes, gave substantially the same testimony and stated that the reason she did not tell the attorney of appellant's mental condition was because she had no idea he would get the death penalty. Both witnesses described appellant as being an anti-social person and testified that several years before he had received a head and brain injury in an automobile accident which affected his mental condition and that he did not know right from wrong.

Appellant's brother also testified upon the hearing of the motion that in his opinion appellant was unable to distinguish between right and wrong. He further testified that he felt that appellant, because of his condition, should be kept "out of the public" and "If I kn*owed* he just had a life sentence then I might not be here."

Rev. M. M. Pearson, called by appellant, testified that in his opinion there was a possibility that appellant could not distinguish between right and wrong.

Dr. Benjamin Scherr, a psychiatrist called by the state, testified that he examined appellant on February 1, 1961, and expressed his opinion that appellant was of sound mind and did know the difference between right and wrong at the time of the commission of the offense.

Appellant insists that under the record the court erred in refusing to grant a new trial and relies upon the rule that where

the defense is insanity, the requirement of diligence in the discovery of newly discovered evidence is not as strict as in other instances. See statement of the rule in 1 Branch's Ann. P.C. 2nd Ed., par. 220, pages 252-255 and cases there cited.

While such is the rule, the exercise of some diligence is ordinarily required.

In Williams v. State, 66 S.W. 2d 306, Judge Hawkins, speaking for the Court on motion for rehearing with reference to the diligence required, said:

"Many cases have been examined in the consideration of the motion for rehearing. Most of them appear to fall in certain well-defined groups; viz.: (a) Where some evidence was introduced on the trial which tended to show that accused was of unsound mind, and no diligence on the part of accused towards newly discovered evidence was shown, but the attorney who represented him at the trial is shown to have used reasonable diligence. Illustrative, see Schuessler v. State, 19 Texas App. 472; Rowden v. State, 112 Texas Cr. Rep. 655, 18 S.W. 2d 170. (b) Where accused was not represented by counsel on his trial, and the showing of insanity was first made upon motion for new trial predicated on newly discovered evidence. Illustrative, see George v. State, 114 Texas Cr. Rep. 458, 26 S.W. 2d 249; Warren v. State, 114 Texas Cr. Rep. 207, 24 S.W. 2d 1090. (c) Where the facts incident to the offense as developed on the trial strongly suggest that accused was of unsound mind, and the evidence produced on motion for new trial is so cogent on the issue of insanity as to almost conclusively establish it. Illustrative, see Horhouse v. State, (Texas Cr. App.) 50 S.W. 361; Walker v. State, 86 Texas Cr. Rep. 441, 216 S.W. 1085; Lindsey v. State, 97 Texas Cr. Rep. 300, 260 S.W. 862; Hill v. State (Texas Cr. App.) 53 S.W. 845. The case of Rich v. State, 115 Texas Cr. Rep. 386, 28 S.W. 2d 802, falls partly in both class (a) and (c)."

The instant case, under the facts presented, does not appear to fall within any of the three groups of cases outlined by Judge Hawkins.

Under the decisions of this Court, newly discovered evidence, to entitle an accused to a new trial, must be such as would likely change the result, if produced on another trial. 1 Branch's Ann. P.C. 2nd Ed., par. 223, pages 256-257; Higginbotham v. State, 3 App. 447; Blake v. State, 3 App. 581; Brown v. State, 6 App.

314; Hutchinson v. State, 6 App. 468; Burns v. State, 12 App. 269; Bruce v. State, 31 Texas Crim Rep. 590, 21 S.W. 681; Burgess v. State, 33 Texas Crim. Rep. 9, 24 S.W. 286; Wade v. State, 40 S.W. 983; Mitchell v. State, 38 Texas Crim. Rep. 170, 41 S.W. 816; Kirksey v. State, 62 Texas Cr. Rep. 641, 135 S.W. 577; Drake v. State, 68 Texas Cr. Rep. 94, 151 S.W. 317; Robinson v. State, 116 Texas Cr. Rep. 523, 28 S.W. 2d 158.

It is the rule that the motion for a new trial is addressed to the sound discretion of the trial court and unless an abuse of such discretion is shown its decision will not be disturbed on appeal. Smith v. State, 162 Texas Cr. Rep. 237, 283 S.W. 2d 936.

The record in the instant case shows that it was not until appellant had received the death penalty that the members of his family employed counsel to seek a new trial on the ground of jury misconduct. Having failed in this effort, they for the first time urged that he was insane. It was admitted that only because he received the death penalty they were urging his insanity. Their testimony on the question of insanity was controverted by a qualified psychiatrist. The alleged newly discovered evidence was not such as would likely change the result if produced upon another trial. Under the record we have concluded that the trial court did not abuse his judicial discretion in refusing to grant a new trial. See Williams v. State, supra, in support of the conclusion reached herein.

We have carefully examined the authorities relied upon by appellant, including the recent case of Purcell v. State, 322 S.W. 2d 268, and do not deem them here controlling. In most of the cases cited, the defense of insanity appears to have been raised upon the main trial and the newly discovered evidence presented upon the hearing of the motion for new trial consisted of either documentary evidence, medical testimony, or other testimony conclusively showing that the accused was insane. Such are not the facts in the present case.

We observe that a jury trial upon the issue of appellant's sanity under the provisions of Art. 932b, Sec. 4, V.A.C.C.P., is not precluded by the disposition of this appeal.

The judgment is affirmed.

Opinion approved by the Court.