## Mark Brown v. The State.

No. 5418.   Decided June 18, 1919.

Rehearing denied October 15, 1919.

### 1.—Burglary—Ownership—Joint Owners—Want of Consent—Corporation.

Where, upon trial of burglary, the person alleged as owner of the stolen property had the actual care, control and management of both the house and business from which the property was taken, the fact that his brothers were equally interested therein would make no difference and would not require the State to allege or prove their want of consent. Following Wharton v. State, 151 S. W. Rep., 300, and other cases, and the fact that the alleged property belonged to the alleged owner as a corporation would make no difference. Following McAnally, 57 S. W. Rep., 832, and other cases.

### 2.—Same—Second Application for Continuance—Witness in U. S. Army.

Where, upon appeal from a conviction of burglary the record showed that the defendant's application for continuance was his second application and the testimony could have been procured by other witnesses than those who were absent in the service of the U. S. Army, and that no effort or diligence was shown to procure the attendance of the other witnesses, there was no error in overruling the application for continuance or the motion for new trial.

### 4.—Same—Requested Charges—Practice in District Court.

Where it appeared from the record on appeal that the requested charges refused by the court were substantially incorporated in the court's main charge to the jury, there was no reversible error.

### 4.—Same—Evidence—Practice in District Court.

Where the purpose of the inquiry of defendant's witness in the trial of the case was to show the materiality of the testimony of his absent wit-

nesses set out in his application for continuance, because a great many people could not remember whether he was at church at the time of the commission of the offense to support his alibi, the court correctly overruled same as it had no proper place in the trial before the jury; besides, it did not support his theory that he could not supply the alleged absent testimony by other witnesses.

5.—Same—Sufficiency of the Evidence.

Where, upon trial of burglary, the evidence was sufficient to support the conviction under a proper charge of the court, there was no reversible error.

Appeal from the District Court of Titus. Tried below before the Hon. J. A. Ward, judge..

Appeal from the conviction of burglary; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*T. C. Hutchings,* for appellant.

*E. A. Berry,* Assistant Attorney General for the State.—On question of continuance: Fulkerson v. State, 57 Texas Crim. Rep., 80. On question of evidence: Clayton v. State, 67 Texas Crim. Rep., 311, 149 S. W. Rep., 119.

LATTIMORE, JUDGE.—Appellant was convicted of burglary in the District Court of Titus County, and his punishment fixed at two years in the penitentiary from which he appeals.

Sometime in April, 1918, a grocery warehouse at Mount Pleasant, Titus County, Texas, was burglarized at night and six buckets of lard, constituting a case, were taken out of said house. It appears that a part of the material of the back door was prized off, making a hole large enough to admit a man's body. It was in testimony that there were about fifty cases of lard near the front of said warehouse and that one of them was carried back to a point near the rear door, broken open, the six buckets of lard taken therefrom, set out on the floor and later carried through the broken door over to the restaurant of one Copeland. The print of the buckets on the floor was sworn to by the owner. The alleged burglarized house belonged to the Lilienstern Estate, the heirs of which were George, Oscar and Eugene Lilienstern. The groceries in the house belonged to a corporation known as George Lilienstern, Inc. It was alleged in the indictment that George Lilienstern was the owner and in possession of both premises and property. Mr. Lilienstern testified that the house was under his control, that he had charge of it, that no one else had anything to do with the estate but himself, that he lost one case of six buckets of lard about the 7th, of May, and found the lard at Copeland's restaurant and carried it back; that he gave no one his consent to enter the house or take the lard.

Complaint is made in various ways by appellant that it was not alleged or proven that the property was taken without the consent of Oscar or Eugene Lilienstern, they being joint owners with George; and further complaint was made because the court refused to permit some inquiries relative to these joint interests. There is nothing in the contentions. No question is raised of the fact that George Lilienstern had the actual care, control, and management of both the house and business. That his brothers were equally interested would make no difference, and would not require the State to allege or prove their want of consent. Article 457, Vernon's C. C. P.; Wharton v. State, 68 Texas Crim. Rep., 187, 151 S. W. Rep., 300; Clark v. State, 26 Texas Crim. App., 486; Aldrich v. State, 29 Texas Crim. App., 394; Lewis v. State, 72 Texas Crim. Rep., 377. That the stock of groceries belonged to George Lilienstern, incorporated, would make no difference under the facts. McAnnally v. State, 57 S. W. Rep., 832; Ricks v. State, 56 S. W. Rep., 928.

Appellant contends that his application for a continuance should have been granted. It was his second application. In such case it must be alleged and shown that the absent testimony cannot be procured from any other source known to defendant, and it is expressly provided by article 608, C. C. P., that the truth of the application shall be addressed to the sound discretion of the trial court. The bill of exceptions setting forth this complaint is approved with the explanation that the testimony showed the presence of other witnesses at the time and place when it was claimed the movements of the appellant would be shown by the testimony of said absent witnesses; and no effort or diligence was shown on his part to get the testimony or presence of said other witnesses. The absent witnesses for whom the continuance was asked, were Davis, Mike and Keith; it is averred that by Davis it would be shown that appellant came to a certain pool hall a few minutes before dark on May 7th, and was with Davis until about thirty minutes after dark, and then got into an auto with Homer Johnson, and several other negroes and drove away, ostensibly to the Baptist Church about one mile distant; that about twenty minutes later Davis went to said church and saw appellant there, and that he did not leave said church until about twelve o'clock that night, and that said Davis then saw appellant get into a car and drive off. It was averred that the absent witnesses Mike and Keith were expected to say that appellant came to said church about twenty or thirty minutes after dark on said night, and remained there until about twelve o'clock. It was shown that all of said witnesses were in the army when the first application for a continuance was made in June, 1918, and were still there when the second application was presented, which is the one referred to in this record; it was stated that one of said witnesses was in New York and two of them in France.

An examination of the testimony of the appellant, while on the stand as a witness in his own behalf, discloses that he stated that after he ate supper on the night in question, he went to said pool hall, seeing witness Davis on his way there, and that when he reached said place, he saw Jack Carlisle, Kittrell, Cap, and a lot of others; that he got a negro named Remus to go after one named Jessie; that he got in the car with Homer Johnson, Ophelia Johnson, Kittrell, and Jack Carlisle and went to said church; that he was with said Kittrell all the time after getting there until he returned to town; that he and Kittrell sat together in church; that after the program was over, he, Jack Carlisle, and Kittrell all waited for the second trip of the car and then came to town in it together. He stated, in response to the State's questions, that Jack Carlisle, at the time of the trial was in Jacksonville, that Johnson and wife were in St. Louis, and that Kittrell was at Waco. These facts show that appellant did know of other sources available from which the same testimony, as that of the absent witnesses, could be obtained. Under our law he could have obtained the testimony of Johnson and wife when in St. Louis; and no reasons are disclosed why Kittrell and Jack Carlisle, who were with him at said church all the time—and one of them returned with him—and who were shown to be in reach of the process of the court, were not brought to testify. We do not think the record shows a case which would require us to find that the discretion of the trial court in overruling this application has been abused.

No errors appear from bills of exceptions numbers two to nine. The matters are not subject to the criticisms aimed at them and the special charges asked were substantially incorporated in the main charge of the court.

Appellant was asked if it was not a fact that he had inquired about a great many people, and none of them would be positive whether they saw him at said church that night or not. Upon objection of the State he was not permitted to answer. The purpose of this inquiry is alleged to be to show the materiality of the testimony of this absent witnesses. We think the question objectionable. The fact that a great many people could not remember if appellant was at church could not be invoked as an excuse for his failure to subpoena all these whom he went with and with whom he sat and with whom he went away and whom he knew would be cognizant of his presence there. Nor can it support the theory that he could not supply the alleged testimony of said absent witnesses from any other source. This was not a jury question and had no proper place in the trial before the jury.

The witness Copeland testified that appellant sold him six buckets of lard on the night of May 7, 1918, or about that time. He fixed the time of purchase as between eight and nine o'clock at night.

The lard was shortly thereafter identified and taken away by the owner and an officer, and as stated, above, there is no question as to the fact that the lard was stolen and that the house in which same was situated, was burglarized. Every theory of appellant was fully and fairly submitted to the jury and they have found against him, and we will not disturb the verdict and judgment which will be affirmed.

*Affirmed.*