## C. O. PRUITT v. THE STATE.

### No. 5875. Decided November 24, 1920.

**1.—Assault to Murder—Evidence—Leading Questions—Bills of Exception.**

Where, upon trial of assault to murder, the witness had testified for the State that defendant threw his wife down, struck her with a knife and that she got up and ran and defendant again caught her and threw her down, an objection to the question by the State whether defendant followed his wife out of the house and tried to cut her, on the ground that it was leading, was correctly overruled, as the facts in substance were already before the jury; besides, the bill of exceptions was insufficient.

**2.—Same—Evidence—Bills of Exception.**

Objections urged to the testimony are not statements of fact, unless they are so verified by the court, and, where the objection was to the question and no answer was shown, the bill cannot be reviewed on appeal.

**3.—Same—Evidence—Opinion of Witness—Bill of Exceptions.**

Where, the bill of exceptions to certain testimony of a physician who testified for the State, with reference to the weapon used, etc., did not show how the same related to the facts of the case, and the weapon is not described, etc., the matter cannot be reviewed on appeal, and there was no reversi ble error.

**4.—Same—Evidence—Cross-examination—Defendant's Appearance—Insanity.**

Where, the State's witness on cross-examination testified that when he arrived at the scene of the cutting, etc., the eyes of defendant were red and glaring, that he did not look right, etc., and the State thereupon asked the witness to look at defendant's eyes then, and tell how they compared with the looks of the eyes at the time he speaks of, which witness answered by saying that the eyes did not look like they did that day, there was no reversible error in the instant case, as the matter was favorable to the de fendant on his plea of insanity.

**5.—Same—Evidence—Not Injurious to Defendant.**

Where, the State's witness was asked if he had ever seen a man immediately after he had committed a crime, and the witness stated he did not remember, this answer could not have affected the defendant injuriously.

**6.—Same—Evidence—Bill of Exceptions.**

Where, the bill of exceptions failed to show how the testimony intro duced on the question of insanity could have injured the defendant, there was no reversible error.

**7.—Same—Insanity—Evidence—Bill of Exceptions.**

Where, the bill of exceptions is too indefinite to be considered, and as presented there is no sufficient reason to show how the rejected testimony with reference to insanity, would have benefited the defendant, there is no reversible error.

**8.—Same—Evidence—Insanity.**

Where, the brother of defendant testified that defendant's father's half-brother had been a person who was generally considered weak-minded, and upon cross-examination testified that he did not know if there was ever a complaint filed against this half-brother for insanity, there was no reversible error.

**9.—Same—Evidence—General Reputation—Charge of Court.**

Where, witness for the defendant testified to defendant's general good reputation as a law-abiding citizen, and on cross-examination testified that he had not heard that defendant had previously beaten his wife, there was no reversible error, same being properly limited.

**10.—Same—General Reputation—Hearsay—Charge of Court.**

Where, defendant's witness testified to the general reputation and standing of the defendant, as a good, law-abiding citizen, and was then asked if he had ever heard that defendant had previously beaten his wife, to which the witness answered that he had heard it, there was no reversible error.

**11.—Same—Newly Discovered Evidence—Motion for New Trial.**

Where, on motion for new trial, defendant set up what he claimed to be newly discovered testimony, which was seriously controverted by the State, all of which matters were set up by affidavit, and the record showed the defendant must have known of the alleged fact to be produced by absent witnesses, the same was not newly discovered evidence; besides, the witnesses could have easily been obtained if proper diligence had been used.

Appeal from the District Court of Wise. Tried below before the Hon. F. O. McKinsey.

Appeal from a conviction of assault with intent to murder; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Alvin M. Owsley,* Assistant Attorney General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was allotted two years in the penitentiary for an assault upon his wife, the evidence showing it was with a knife.

There are several bills of exception reserved to the rulings of the court which are indefinite and incomplete in their statements.

The first bill recites that defendant threw Mrs. Pruitt, his wife, down on the floor and struck her with a knife, and that Mrs. Pruitt got up and ran and the defendant "got her again and threw her down." State's counsel propounded the following questions to the witness and she made answers as set out: "Q. Did he, the defendant, follow Mrs. Pruitt out to the East side of the house? A. Yes sir. Q. Did he try to cut her? A. He did." Appellant urged objection on the ground that the questions were leading and suggestive, and that the witness had shown no disposition to conceal any material

fact in her testimony, and was competent to testify without being led. The witness was named Katie Coffee. If the running out to the east side of the house was a part of the transaction and *res gestae* of the fight or a continuance of it, we are of opinion that it was not error. The witness had testified that appellant threw his wife down, struck her with a knife, and that she got up and ran and defendant again caught her and threw her down. The facts in substance were already before the jury. Branch's Ann. P. C., p. 90, Sec. 157. We are of opinion that as this bill presents the matter there was no error, and believe it was admissible.

While the witness Merrifield was testifying he stated that when he arrived on the scene of the cutting the defendant and his wife were sitting down at the east side of the garage, and that defendant had a knife in his hand. State's counsel then asked the witness if the knife he handed to witness was the one defendant had in his hand at that time, and witness replied that it looked like the knife defendant had. The State then introduced the witness Moore and asked him to examine the knife and state as a physician and surgeon if the knife was such a weapon as was calculated to inflict serious bodily injury or death. The objection urged are not statements of fact and are not so verified by the court. The answer of the witness. if any was given, is not shown. The objection was to the question. Whether the witness testified or not the bill fails to disclose.

The same witness was asked if as a physician and surgeon he could tell the jury what would have been the result in the event the jugular vein had been severed. Objection was urged that this was but a conclusion or opinion of the witness. and was also a hypothetical question and improper. The witness answered: "Well, if there had not been some one there to have taken it up she would have bled to death." How this related to the facts of the case is not stated. This is all that the bill shows. Whether it was permissible to prove by the doctor that if the knife had cut the jugular vein she would have bled to death unless relief had come, was not a matter of serious importance, and it occurs to us that as presented there would be no such error as requires this court to reverse the judgment if error. Whether it was the subject of expert testimony or not would make but little difference; besides, the description of the knife is not shown by the bill of exceptions. The knife may have been of sufficient dimensions to have killed the woman or cut the jugular vein. The evidence shows she was cut on the throat and right near or over that vein. We are of opinion there is no valid objection shown or reason why the testimony should not be given.

The same witness on cross-examination by defendant testified that when he arrived at the scene of the cutting two or three hours after its occurrence the "eyes of defendant were red and glaring," and that his eyes did not look just right and had a wild and excited look; thereupon, on further inquiry by the State the witness was asked:

"Look at the defendant's eyes now, how do his eyes compare with them then?" The witness stated: "His eyes do not look like they did that day." Objection was urged to this testimony. We are of opinion this was not error. If we go to the statement of facts it is shown that the plea of insanity was set up by defendant. It occurs to us that this testimony was rather favorable to the defendant. If he had the appearance or indication of mental aberration at the time the doctor found him immediately after cutting his wife, it would be a favorable fact going to indicate to the minds of the jury that defendant's mind was then abnormal, and the further fact that his eyes at the time of the trial were not as they were at the time of the cutting would also be favorable to the conclusion that at the time of its occurrence his mind might have been abnormal. The theory of appellant was that he was not insane at the time of the trial but at the time of stabbing his wife.

The next bill shows that the same witness was asked if he had ever seen a man immediately after he had committed a crime. He stated he did not remember. The answer could in no way have affected appellant injuriously.

The same witness was also asked if he as an expert on insanity had ever known a man who had only one insane impulse and only one. He answered: "I think Mrs. Jim D—— last winter when she went crazy wanted to hit her boy with the poker." This was objected to, and the witness was required to answer yes or no. He answered. "Yes, if she ever made another one I never knew it." It is not shown in the exceptions how this could have been injurious.

The witness Alfred Pruitt testified: "I am a brother of the defendant. My father had a half-brother that did not seem like he had much mind and was generally considered weak-minded. This Cogburn boy at Fort Worth that killed himself and wife is a first cousin of Lum Pruitt, the defendant." He was then asked: "Are they anything alike in disposition and make up. Were they anything like the same height?" Witness answered: "Yes, pretty well the same height, he was a red-face fellow." He was then asked if there was any similarity between them. On objection by the State witness was not permitted to answer. Appellant expected to show that the Cogburn boy and the defendant were cousins and very much alike in general build, disposition and character. His contention was that this testimony would have tended to establish that there was insanity in the family, the defense of the defendant being that he was insane at the time of the commission of the offense set out in the indictment. This bill is too indefinite to be considered, and as presented there is no sufficient reason to show how it would have benefited defendant.

It was also testified by the same witness that defendant's father's half-brother had been a person who was generally considered weak-minded. After proving this witness was then asked this question: "Was there ever a complaint filed against your father's half-brother

for insanity?" His answer would have been: "Not that I know of." This could not have injured appellant. The mere fact that the half brother of defendant's father was of a weak mind was provable. It was germane to that question that he was not thought by the family to be of sufficient weak mind to require his being restrained, or charged with insanity.

The witness Watson testified on direct examination for defendant that he lived in the neighborhood of appellant and that appellant was a law-abiding citizen and his reputation was good. He was asked if he had ever heard appellant had previously beaten his wife. He answered that he had not. This could not have injured appellant.

McKinney testified to the general reputation and standing of appellant as a law-abiding citizen, and was asked if he had ever heard that defendant had previously beaten his wife. He answered that he had heard it. This was proper in view of the fact that the witness had testified to the reputation of the accused as being that of a law-abiding citizen. This would tend to impair the testimony of the witness. He having testified from hearsay as to reputation, it was proper for him to state that he had heard defendant had previously given his wife a whipping. The court limited this to the question of impeachment and instructed the jury it could not be considered for any other purpose.

On the motion for new trial appellant set up what he claimed to be newly discovered testimony. This was seriously controverted, and the controverting statements of the district attorney are filed in the case with the motion for new trial. There was no evidence introduced; if so the record does not show it, the matter being presented alone upon affidavits and matters set up in the motion and controversion. There was an application for continuance also made for some, if not all the witnesses, which was overruled, but this is not perpetuated by bill of exceptions, and, therefore, cannot be considered further than as shown by the motion for new trial and the State's controversion. These matters show that defendant knew of the facts to be produced by these absent witnesses, therefore it could not be considered as newly discovered testimony. They lived in the same neighborhood and had lived there for years. It was shown that appellant's relatives were taking an interest in the case, and in fact some of them lived in the immediate neighborhood and vicinity where the trouble occurred and could easily have been obtained. In other words, as we understand this motion for a new trial, it does not show newly discovered testimony, as urged for a new trial below and for reversal here. The diligence to secure these witnesses we think is not shown to be sufficiently strong to require this court to, reverse. The witnesses could have been obtained. Quite a number of witnesses from the same neighborhood were present at the trial and testified.

As the record presents itself to us we are of opinion that the judgment should be affirmed, and it is accordingly so ordered.

*Affirmed.*