**Lindsey Ray SEALS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04–81–00044–CR.**

Court of Appeals of Texas,
San Antonio.

May 19, 1982.

Allan R. Manka, San Antonio, for appellant.

Lindsey Ray Seals, pro se.

Bill White, Dist. Atty., Douglas V. McNeel, Asst. Dist. Atty., San Antonio, for appellee.

Before ESQUIVEL, BUTTS and CANTU, JJ.

## OPINION

CANTU, Justice.

Appeal is taken from a conviction for burglary of a habitation as a habitual offender, and punishment was set at confinement in the Texas Department of Corrections for life. Trial on the merits was before a jury and punishment was set by the trial court.

Appeal is predicated upon seven grounds of error.

In his first ground of error appellant asserts that the trial court abused its discretion in overruling his second motion for continuance. An indictment was returned against appellant on April 5, 1978, charging the offense of burglary of a habitation enhanced by two prior convictions pursuant to the provisions of Tex.Penal Code Ann. § 12.42(d) (Vernon 1974). Arraignment was had on April 14, 1978, and a trial date was set for April 24, 1978. Appellant's first motion for continuance was filed, heard and granted on April 24, 1978 and a new trial setting agreed upon for May 22, 1978. Appellant's first motion for continuance alleged that his court-appointed attorney had not had sufficient time to prepare a defense because the transcription of an examining trial was not yet available to appellant.

On April 26, 1978, appellant sought and was granted the appointment of a court-appointed investigator for the purpose of locating witnesses deemed necessary to his alibi defense. The trial setting was then changed from May 22, 1978 to July 3, 1978. For some undisclosed reason the case did not come to trial on July 3, 1978. On August 23, 1978, however, appellant filed his motion seeking to acquire, at State expense, the transcription of the testimony at the trial on the merits in the case involving one of his co-defendants. The transcription

was sought "for possible impeachment purposes". The trial court denied the request.

The case was subsequently reset to September 11, 1978. Jury selection began on September 12, 1978, and immediately preceding voir dire examination, appellant presented his second motion for continuance. Counsel for appellant, arguing on behalf of the motion, stated:

Mr. Manka (Defense Atty): We would like to present to the court a motion for continuance based on the fact that we have not had time—enough time since the last setting to locate three witnesses who are expected to provide alibi evidence for the defendant, and my investigator has not had time to locate and interview the eye witness in this case, and because I have not had an opportunity to secure the transcript of the testimony in the trial of a co-defendant, which the court reporter tells me will be ready in three or four weeks in the appeal in that case. At that time we may have access to the transcript already in this case.

The arresting officer, one of the officers involved in the case, has contradicted his testimony from a previous hearing and had indicated that the record was incorrect, and I believe that the transcript of the trial of the co-defendant is essential to our defense to show the character of the witness that is testifying.

The motion, in part, recited:

### II

The defense has not had ample time since the last trial setting of the cause to locate three alibi witnesses, Mr. and Mrs. Willie Moore, and Mr. Elijah Burrell, addresses unknown. The defense has had a private investigator appointed who had made diligent efforts to locate the above mentioned witnesses but who has not sufficient time to exhaust all avenues of investigation.

### III

The witnesses are material as their testimony is expected to provide an alibi for

this defendant. The witnesses are not absent by the procurement or consent of the defendant. Their testimony cannot be procured from any other source known to the defendant. The defendant has reasonable expectation of procuring the testimony of the witnesses at the next term of court.

The motion further recited that the transcription of the testimony of a co-defendant's trial would be available within three to four weeks and that it was vital to the defense impeachment of State's witnesses who have given conflicting testimony.

Appellant alleges that he was forced to trial over his announcement of "not ready." The record, however, reflects that on the preceding day, September 11, 1978, after disposing of pretrial motions, the trial court made the following inquiry of appellant's counsel:

> The Court: Okay. The motion is overruled. Can we get thirty-six jurors in the morning? Do you want to start on them this afternoon or start in the morning?
>
> Mr. Manka: Why don't we start in the morning.
>
> \* \* \* \* \* \*
>
> *Mr. Manka: I am still not ready, Judge, for purposes of the record.*

The next day, following denial of his second motion for continuance, appellant did not comment on the court's ruling.

Although appellant argues that the court's ruling did not permit him to present the testimony of witnesses to substantiate his alibi defense, his real argument concerns his inability to offer alibi testimony from witnesses who had no prior criminal rec-

ords. Appellant did not testify but elected to call two co-defendants who disclaimed any participation by appellant in the burglary in question. Through their testimony it was shown that appellant had just recently joined their company prior to being arrested. Although appellant recognizes that the testimony sought of the missing witnesses would have been cumulative, he argues that he should have been permitted to establish his alibi defense through more reputable witnesses.[1]

■ Although appellant claims to have shown diligence in the procurement of his own witnesses, the record reflects that appellant's court appointed investigator spent only four hours on May 21, 1978, attempting to locate the missing witnesses and had ceased providing services to appellant's attorney as of June 1, 1978. The record further reflects that appellant was out on bail at different times between the date of original arrest and trial date.[2] There is no indication as to the efforts made by appellant personally to locate his witnesses.

Tex.Code Crim.Pro.Ann. art. 29.07 (Vernon 1966) provides:

> Subsequent motions for continuance on the part of the defendant shall, in addition to the requisites in the preceding article, state also:
>
> 1. That the testimony cannot be procured from any other source known to the defendant; and
>
> 2. That the defendant has reasonable expectation of procuring the same at the next term of the court.

We note that appellant in his second motion for continuance was not able to state that he had a reasonable expectation of procuring the required testimony at the next term of the court.[3] And although he did allege

---

1. Both of the co-defendants possessed long criminal records and had already been convicted for their complicity in the burglary.

2. Appellant was originally released on March 11, 1978 and remained at liberty until rearrested on April 7, 1978 on an after indictment bond increase capias. He then secured his release once again on May 18, 1978 and remained at liberty until July 22, 1978 when arrested following a bond forfeiture.

3. The motion alleged that "there is no reasonable expectation that attendance of these witnesses can be secure (sic) during the present term of court by a postponement of the trial to some future day of said term." If the evidence does not indicate a probability that the witness can be secured by a postponement, or if it appears that a continuance due to the absence of the witness would delay the trial indefinitely, the motion may be properly denied. *Salinas v. State*, 542 S.W.2d 864, 866 (Tex.Cr.App.1976).

that the testimony could not be procured from any other source known to the defendant, the record reflects, and his brief admits that the testimony was cumulative and that the real concern was the character of the witnesses and not their testimony. It is axiomatic that on a second application for continuance it must be alleged and shown that absent testimony cannot be procured from any other source known to appellant. *Taylor v. State*, 88 Tex.Cr.R. 470, 227 S.W. 679 (1921); *Brown v. State*, 85 Tex.Cr.R. 618, 215 S.W. 97 (1919). Furthermore, it is not error to deny a second application for continuance on the basis of absent testimony where the motion is made to secure cumulative testimony. *See Wenck v. State*, 156 Tex.Cr.R. 50, 238 S.W.2d 793 (1951); *Richardson v. State*, 154 Tex.Cr.R. 422, 228 S.W.2d 179 (1950). We further hold that appellant failed to establish the exercise of due diligence in the procurement of his witnesses.[4] The trial court, therefore, did not abuse its discretion in overruling appellant's second application for continuance. *Imhoff v. State*, 494 S.W.2d 919 (Tex.Cr. App.1973); *Pitcock v. State*, 420 S.W.2d 719 (Tex.Cr.App.1967).

■ The State correctly points out that appellant's motion was defective for failure to comply with Tex.Code Crim.Pro.Ann. art. 29.06(3) (Vernon 1966). Article 29.06(3) provides that a defense motion for continuance on account of the absence of a witness must state the "facts which are expected to be proved by the witness." Appellant's motion simply alleged that "the witnesses are material as their testimony is expected to provide an alibi for this defendant." Having failed to allege with sufficient specificity the facts which were expected to be proved by the witnesses, the trial court did not err in overruling appellant's second mo-

tion for continuance. *Fields v. State*, 495 S.W.2d 926 (Tex.Cr.App.1973); *Glover v. State*, 470 S.W.2d 688 (Tex.Cr.App.1971). Appellant's first ground of error is overruled.

■ Appellant next alleges that the trial court committed reversible error in overruling his motion for transcription of testimony, in violation of his rights to effective assistance of counsel, due process and equal protection of law. The argument presented in support of the alleged error is identical to that advanced and rejected in *Shirden v. State*, 439 S.W.2d 348 (Tex.Cr.App.1969).

Appellant argues that denial of the transcription of testimony from the trial of his co-defendant deprived him of valuable impeaching matter. Specifically, appellant points out that one of the arresting officers testified differently at an examining trial from his testimony at the trial of appellant's co-defendant with regard to a search of appellant and evidence thereby recovered from his person. It is appellant's contention that availability of this officer's prior testimony would have permitted impeachment on an important aspect of the case.

We would not normally feel compelled to elaborate further on such a contention, but we believe that the magnitude of the contention requires further attention and, accordingly, we draw from the record. We note that even without the transcription of the prior testimony, appellant's counsel was able to cross-examine the witness about very specific questions and answers previously made.[5] The record illustrates:

(Defense Attorney) Q: Have you ever testified differently? That is, have you ever said that you don't remember where the—

---

4. It would appear that less diligent effort was exerted in the instant case than was done in *Salinas v. State, supra,* where the court's denial of a continuance was held not to constitute error.

5. While appellant claims that access to the prior testimony would have expanded his discovery of the State's case, we interpret his real complaint as addressing a need for impeachment evidence. At the very outset of the trial,

appellant's counsel advised the trial court what he specifically was seeking. He stated:

The arresting officer, one of the officers involved in the case, has contradicted his testimony from a previous hearing and had indicated that the record was incorrect, and I believe that the transcript of the trial of the co-defendant is essential to our defense to show the character of the witness that is testifying.

(Officer) A: I have never said that I don't remember.

(Defense Attorney) Q: You never have? Did you testify at an examining trial for Mr. Tealer and Mr. Scruggs on March 15th, 1978?

(Officer) A: I did.

\* \* \* \* \* \*

(Defense Attorney) Q: ... [D]o you remember testifying in that case that you didn't remember where the property was found?

(Officer) A: No, sir.

(Defense Attorney) Q: Well, let me try to refresh your memory on this. You were giving testimony in response to questioning by a man named Sawyer who works for the D.A.'s office, and you testified about stopping the automobile and searching the individuals and then as you're searching him, he asks you—okay. Do you believe the property to be this property—or asking you about what you found in the pockets, and your answer was—It turned out to be some of the property that belonged to the complainant, do you remember saying that?

(Officer) A: No, I don't.

(Defense Attorney) Q: You don't remember saying that?

(Officer) A: I possibly said it. I don't remember it.

(Defense Attorney) Q: Then the next question was—How did you find this outcome, sir? And your answer was—When the complainant did come in to identify her property. Do you remember saying that?

(Officer) A: That sounds logical.

(Defense Attorney) Q: Then the next question by Mr. Sawyer—I see. And some of that property was recovered in their pockets. And your answer was—It was recovered in their pockets; do you remember that?

(Officer) A: No, I don't specifically.

(Defense Attorney) Q: Then the next question is—By Mr. Sawyer—Do you remember whose pockets it was recovered in, sir? And your answer—No, sir. Do you remember saying that?

(Officer) A: I do not remember saying that.

While we may surmise from the manner of his cross-examination that appellant's counsel had access to portions of the officer's prior testimony or had made notes at the hearing we nevertheless need not decide that the action of the trial court in denying appellant a copy of the *entire*[6] prior testimony was error, inasmuch as the record does not reflect an attempt by appellant to obtain the transcription of testimony through other avenues available to him. The record discloses no evidence of an effort to subpoena the court reporter with his notes for use as impeachment evidence,[7] nor is there evidence that a request was made for only the relevant portions of the officer's prior testimony. In view of the answers given by the officer during cross-examination by appellant's counsel, we do not perceive how appellant would have benefited from the transcribed testimony. We note that the officer testified after having refreshed his memory with his offense report, and that appellant's counsel effectively cross-examined the officer to the point of disclosing errors in the report. We fail to see how appellant was harmed by the trial court's action. We decline to find error where none is apparent. Appellant's second ground of error is overruled.

█ Appellant next asserts that the trial court erred in overruling his objection to the charge of the court to the jury and in not granting his special requested instruction. At the close of all the evidence appellant orally objected[8] to the proposed charge of the court on guilt/innocence because it

---

6. Appellant's motion for transcription of testimony filed a month prior to trial sought to obtain all of the testimony adduced at the trial of his co-defendant, Roy M. Tealer, without specifically informing the trial court what was needed.

7. *See* Tex.Code Crim.Pro.Ann. arts. 24.02, 24.-03 (Vernon 1966).

8. The procedure followed is identical to that approved in *Dirck v. State*, 579 S.W.2d 198 (Tex.Cr.App.1979).

failed to contain an instruction desired by appellant. Quoting from *Suff v. State*, 531 S.W.2d 814 (Tex.Cr.App.1976) and *Robinson v. State*, 493 S.W.2d 780 (Tex.Cr.App.1973) appellant requested the following instruction:

> To be guilty of a felony offense as a principal a defendant must be fully present at the time of its commission or if not present at the time of the commission of the offense he must at the time the act is done, be himself actively engaged in the furtherance of the common purpose and design. . . .

The trial court, noting that the language requested by appellant addressed situations arising under the law of principals as it existed under Tex.Penal Code Ann. arts. 65–69 (Vernon 1925),[9] declined the requested instruction. The trial court did instruct on circumstantial evidence, qualified by the law of parties to offenses, as defined in Tex.Penal Code § 7.01 (Vernon 1974):

> Our law provides a person is criminally responsible as a party to an offense if the offense is committed by his own conduct, or by the conduct of another for which he is criminally responsible, or by both. Each party to an offense may be charged with commission of the offense.

The trial court then instructed the jury:

> Mere presence alone will not make a person a party to an offense. A person is criminally responsible for an offense committed by the conduct of another if acting with intent to promote or assist the commission of the offense he solicits, encourages, directs, aids or attempts to aid the other person to commit the offense.

For the first time, on appeal, appellant argues that he should have received the benefit of a charge on some lesser offense under the theory that he might be guilty as an accessory rather than as a party and relies upon the language found in such cases as

*Urtado v. State*, 605 S.W.2d 907 (Tex.Cr. App.1980); *Wygal v. State*, 555 S.W.2d 465 (Tex.Cr.App.1977) and *Easter v. State*, 536 S.W.2d 223 (Tex.Cr.App.1976). The provisions of Tex.Penal Code § 7.01 abolished the distinction formerly made by Tex.Penal Code Ann. arts. 65 and 70 (Vernon 1925) between "principals" and "accomplices." *Easter v. State, supra.* The former Penal Code's provision that an "accessory" was a party to a crime has been eliminated and the conduct formerly constituting accessory acts is proscribed in the new Penal Code by § 38.05, which defines a separate and distinct crime of "hindering apprehension or prosecution." *Wygal v. State, supra.*

Appellant relied upon the defense of alibi and never once suggested complicity in the crime in any manner or to any degree. Under the evidence, the jury was justified in finding that appellant was either guilty as a principal or not guilty at all. Appellant will not now be heard to suggest that he might have been guilty of conduct proscribed by Tex.Penal Code Ann. § 38.05 (Vernon 1974)[10] although not guilty as a principal. The court's charge instructing on alibi and the law of parties correctly applied the law to the facts of the case. Appellant's third ground of error is without merit and is overruled.

In his fourth ground of error appellant challenges the sufficiency of the evidence to support the enhancement allegations in the indictment. The indictment, in the second and third paragraphs, alleged the following:

> And the Grand Jurors aforesaid do further present that prior to the commission of the aforesaid offense by LINDSEY RAY SEALS, to-wit: on the 7TH day of AUGUST, A.D., 1975, in the 186TH JUDICIAL District Court of BEXAR COUNTY, TEXAS, in Cause No. 75–CR–0774, on the docket of said Court, the said

---

9. Now replaced by Tex.Penal Code Ann. §§ 7.01 and 7.02 (Vernon 1974) [Acts 1973, 63rd Leg. p. 883, ch. 399, § 1, effective Jan. 1, 1974].

10. Section 38.05 provides in relevant part:
 (a) A person commits an offense if, with intent to hinder the arrest, prosecution, conviction, or punishment of another for an offense he:
 (1) harbors or conceals the other;
 (2) provides or aids in providing the other with any means of avoiding arrest or effecting escape; . . .

LINDSEY RAY SEALS, hereinafter referred to as defendant, was duly and legally convicted in said last named Court of a felony, to-wit: UNLAWFUL POSSESSION OF FIREARMS ON PREMISES LICENSED FOR THE SALE OF ALCOHOLIC BEVERAGES, THIRD DEGREE, upon an indictment then legally pending in said last named Court and of which said Court had jurisdiction; and said conviction was a final conviction and was a conviction for an offense committed by the defendant, prior to the commission of the offense hereinbefore charged against him, as set forth in the FIRST paragraph hereof.

And the Grand Jurors aforesaid do further present that prior to the commission of each of the aforesaid offenses by the defendant, to-wit: on the 3RD day of SEPTEMBER, A.D., 1971, in the 175TH JUDICIAL District Court of BEXAR COUNTY, TEXAS, in Cause No. 71–1187–B, on the docket of said Court, the said LINDSEY RAY SEALS, the aforesaid defendant, was duly and legally convicted in said last named Court of a felony, to-wit: ROBBERY BY ASSAULT, upon an indictment then legally pending in said last named Court and of which said Court had jurisdiction; and said conviction was a final conviction and was a conviction for an offense committed by the defendant prior to the commission and conviction of the offense hereinbefore charged against him in the SECOND paragraph hereof, and said conviction set forth in this paragraph was prior to the commission of the offense set forth in the FIRST paragraph hereof; against the peace and dignity of the State.

It is not altogether clear what appellant complains of as he alleges in one instance that the judgment, as amended, in Cause No. 75–CR–0774 fails to prove the date of the *conviction.* In the next breath he complains that the amended judgment fails to reflect the date of the *commission* of the offense. His argument concludes that the trial court had no evidence before it concerning the date of *commission* of the offense alleged in Cause No. 75–CR–0774,

which was contained in the second paragraph of the indictment.

Appellant's objection at trial was that the pen packet in Cause No. 75–CR–0774 contained hearsay information which contained the only reference to the date of commission of the offense. We construe appellant's contention to be that the judgment reflecting appellant's conviction in Cause No. 75–CR–0774 failed to indicate the date of the commission of that offense, and that without this date, the trial court had no basis for concluding that the offense was committed subsequent to the prior conviction, alleged in the third paragraph of the indictment, having become final.

 In order to invoke the provision of Tex.Penal Code Ann. § 12.42(d) (Vernon 1974), it is necessary that each succeeding conviction be subsequent both in point of time of the commission of the offense and the conviction therefor. *McCarter v. State,* 527 S.W.2d 296 (Tex.Cr.App.1975). The indictment must so allege and the averments of the indictment must be supported by proof. *Gutierrez v. State,* 555 S.W.2d 457 (Tex.Cr.App.1977). The State sought to prove up the prior convictions by offering in evidence two pen packets containing court records reflecting convictions for the offenses alleged in the second and third paragraphs of the indictment.

Appellant argues that the State relies upon a judgment in Cause No. 75–CR–0774 to supply the date of commission of the offense and to prove that the conviction occurred subsequent to the conviction becoming final in Cause No. 71–1187–B. The original judgment in Cause No. 75–CR–0774 reflects that the offense was committed on August 24, 1974. The pen packet, however, also contains an amended judgment which does not make reference to the date of the commission of the offense. It is appellant's contention that the amended judgment displaced the original judgment as opposed to supplementing it and, therefore, we may not consider the original judgment to supply the date the offense was committed. He reasons that the amended judgment reflects a change in the decision of the court

rather than a correction of a clerical error, and that the effect of the amendment is to set aside and supersede the part affected, which includes any recitation concerning the date of the offense. Reliance is had upon *Home Indemnity Co. v. Muncy*, 449 S.W.2d 312 (Tex.Civ.App.—Tyler 1969, writ ref'd n. r. e.). We need not decide appellant's ingenious contention since, even assuming *arguendo* that the amended judgment superseded and displaced the original judgment as a judgment in the case, the original judgment still remains an instrument of record properly certified to by the legal custodian and record clerk of the Texas Department of Corrections as belonging to appellant, a person committed to said institution. As such, it may be considered as an integral part of the pen packet for whatever evidentiary value it may have.[11] *See Gutierrez v. State*, 555 S.W.2d 457 (Tex. Cr.App.1977), where the appellate court searched the entire record in vain for proof of the date of commission of the offense in the subsequent conviction alleged for enhancement. *See also Alvarado v. State*, 596 S.W.2d 904 (Tex.Cr.App.1980) and *Garner v. State*, 552 S.W.2d 809 (Tex.Cr.App.1977), both indicating that a search of the entire record may be had for proof of the date of commission of the offense upon which the second conviction was based.

The obvious intent of the trial court in Cause No. 75–CR–0774 was to reduce, by amended judgment, appellant's punishment from three years' to two years' confinement, so "that the ends of justice be served." No other change was made by the amendment.

The recital in a judgment of the date of the offense is unnecessary to the validity of judgment, it being in the nature of surplusage. *Green v. State*, 542 S.W.2d 416 (Tex. Cr.App.1976). Merely because the recital is not essential to the judgment, however, this does not render it incompetent as evidence. *Green v. State, supra; Ruiz v. State*, 499 S.W.2d 299 (Tex.Cr.App.1973). We see no difference in law between a recital of the

offense date in an indictment offered as proof under § 12.42 and the offering of a recital of the offense date in the judgment contained in a properly certified pen packet, whether the judgment be the original judgment or an amended judgment.

We find the proof of the enhancement paragraphs to be in full compliance with the procedures approved in *Turner v. State*, 550 S.W.2d 686 (Tex.Cr.App.1977); *Green v. State, supra; Von Burleson v. State*, 505 S.W.2d 553 (Tex.Cr.App.1974); and *Espinosa v. State*, 463 S.W.2d 8 (Tex.Cr.App.1971). Appellant's fourth ground of error is overruled.

Appellant next contends, by his ground of error number five, that the trial court erred in not granting his motion for new trial alleging newly discovered evidence. The "newly discovered evidence," appellant admits, was the testimony of the witnesses sought to be obtained through the motion for continuance made the basis of appellant's first ground of error. While the testimony may have been newly obtained, it was manifestly not newly discovered evidence. Appellant concedes that the testimony was cumulative in nature, but again stresses that these newly obtained witnesses were not subject to impeachment on the basis of prior criminal records, unlike his witnesses at trial. The gist of his contention seems to be that the procuring of qualitatively more credible witnesses entitles him to a new trial even though the testimony of the more desirable witnesses is cumulative of that offered by the less desirable witnesses. He relies on *Abramson v. State*, 120 Tex.Cr.R. 11, 47 S.W.2d 303 (1932). Reliance on *Abramson* is misplaced.

In *Abramson*, the motion for new trial was accompanied by the affidavits of two witnesses, seemingly disinterested, both of whom swore that they had not disclosed their knowledge of facts bearing directly on the participation or non-participation of the defendant in an altercation made the basis of the prosecution, until after his convic-

---

11. We do not view the amended judgment as falling within the prohibition in *McCrary v. State*, 604 S.W.2d 113 (Tex.Cr.App.1980) because the document bears the indicia of relia-

bility sufficient to insure the integrity of the fact finding process commensurate with the constitutional rights of confrontation and cross-examination.

tion. Unlike the witnesses in *Abramson*, the witnesses, claimed by appellant to be newly discovered, were not disinterested, unrelated to, nor unconnected in any way with appellant.

At the amended motion for new trial hearing, appellant's brother testified as to his efforts to locate the absent witnesses. James Seals, appellant's brother, testified that he did not begin searching for the absent witnesses until he talked with appellant some time after the trial. Upon further examination, he admitted searching for the witnesses since appellant's arrest. The witness, Sara Chase, testified that appellant had been with her, her mother and her stepfather on the day of the offense and that she was familiar with appellant because he had been staying with her and her relatives for a few days during the period in question. The testimony adduced at the hearing produced nothing in the way of newly discovered evidence, nor did it appear to be other than cumulative.

■ To authorize a new trial on newly discovered evidence, it generally must be shown that the evidence was unknown to the movant before the trial, that his failure to discover it was not due to his want of diligence, that its materiality was such as would probably bring about a different result on another trial, and generally, that it was competent, and not merely cumulative, corroborative, collateral or impeaching. *Eddlemon v. State*, 591 S.W.2d 847 (Tex.Cr. App.1979); *Honea v. State*, 585 S.W.2d 681 (Tex.Cr.App.1979); *Hernandez v. State*, 507 S.W.2d 209 (Tex.Cr.App.1974); *Huffman v. State*, 479 S.W.2d 62 (Tex.Cr.App.1972); *Garcia v. State*, 435 S.W.2d 533 (Tex.Cr. App.1968); *McDowell v. State*, 96 Tex.Cr.R. 512, 258 S.W. 186 (1924); *McGaughey v. State*, 74 Tex.Cr.R. 529, 169 S.W. 287 (1914). If the defendant fails to establish any one of these essentials, a new trial should be refused. *McGaughey v. State, supra*. Because a motion for new trial on grounds of newly discovered evidence is to be closely scrutinized, and is largely confided to the discretion of the trial court, the disposition there made will not be disturbed on appeal unless it be apparent that the trial court abused its discretion to the prejudice of the

defendant. *McGaughey v. State, supra, Eddlemon v. State, supra*.

■ It appears that the matters which appellant insists he could show, if granted a new trial, were as well known by him before his trial as they could have been after trial. By no stretch of the imagination can we, therefore, conclude that the evidence was newly discovered. *Thomas v. State*, 124 Tex.Cr.R. 437, 63 S.W.2d 705 (1933); *Williams v. State*, 125 Tex.Cr.R. 31, 66 S.W.2d 306 (1932); *Pruitt v. State*, 88 Tex. Cr.R. 203, 225 S.W. 525 (1920); *Howe v. State*, 77 Tex.Cr.R. 108, 177 S.W. 497 (1915); *Smith v. State*, 76 Tex.Cr.R. 508, 175 S.W. 1063 (1915); *Adams v. State*, 65 Tex.Cr.R. 44, 143 S.W. 185 (1912). Perhaps the testimony was newly obtained, but that does not mean it was newly discovered.

In the instant case, appellant relied on the defense of alibi as raised by the testimony of his co-defendants. If these additional witnesses sought to corroborate appellant's alibi defense they must of necessity have been with appellant, and he must have known of their testimony prior to trial. Under such circumstances the testimony was not newly discovered. *Baker v. State*, 504 S.W.2d 872 (Tex.Cr.App.1974); *Hilton v. State*, 443 S.W.2d 843 (Tex.Cr.App.1969); *Martin v. State*, 131 Tex.Cr.R. 387, 98 S.W.2d 810 (1936); *Moon v. State*, 125 Tex. Cr.R. 570, 69 S.W.2d 70 (1934); *Emanuel v. State*, 112 Tex.Cr.R. 412, 16 S.W.2d 1083 (1929); *Hardiway v. State*, 108 Tex.Cr.R. 659, 2 S.W.2d 455 (1928); *Garlington v. State*, 99 Tex.Cr.R. 331, 269 S.W. 791 (1925); *McDowell v. State*, 96 Tex.Cr.R. 512, 258 S.W. 186 (1924).

Additionally, appellant concedes that the testimony was cumulative. Since we have already held, in overruling appellant's first ground of error, that he has failed to demonstrate diligence in securing the presence of the witnesses at the trial on the merits, we are constrained to hold that the trial court's ruling on the motion for new trial is amply supported by the record. *Hernandez v. State*, 507 S.W.2d 209 (Tex.Cr.App.1974). We hold that appellant has not discharged his burden under any of the essentials enumerated in *Honea v. State, supra*, and

*McGaughey v. State, supra.* Nor do we believe that the additional testimony would produce a different result at another trial. Appellant's fifth ground of error is overruled.

■ Appellant next asserts that the trial court erred in not permitting a defense witness to explain an apparent inconsistency in testimony after he was impeached with a prior inconsistent statement. During the defense portion of the trial, defense witness Andrew Scruggs, a co-defendant who had previously been convicted for his complicity in the crime, testified that he, defense witness Tealer and two other individuals committed the burglary in question and that appellant was not involved in the burglary. On cross-examination Scruggs admitted signing a written stipulation which implicated appellant as a co-actor in the burglary.[12] During subsequent direct examination and cross-examination the witness was permitted to explain that he had not carefully read the stipulation and that he was not aware that appellant's name was included in the stipulation at the time he signed it. Scruggs was thus given a sufficient opportunity to explain his contradictory statement.

The record reflects that the witness was seeking to reveal to the jury the plea bargaining agreement he had negotiated with the State in terms of punishment received. The trial court prohibited further inquiry into that area and in no manner limited the witness in his efforts to explain the contradictory statement. There is no merit to appellant's contention that the trial court hampered his efforts at rehabilitating the witness Scruggs. Clearly, the witness was entitled to explain away the contradiction if he could, *Sternlight v. State,* 540 S.W.2d 704 (Tex.Cr.App.1976) and that is exactly what Scruggs did. He was not, however,

entitled to disclose to the jury the results of his co-defendant's plea bargaining efforts, inasmuch as the punishment assessed his co-defendant or the results of his trial are not admissible in appellant's trial. *Adams v. State,* 531 S.W.2d 626 (Tex.Cr.App.1976); *Walker v. State,* 530 S.W.2d 572 (Tex.Cr.App.1975); *Antwine v. State,* 486 S.W.2d 578 (Tex.Cr.App.1972); *Tucker v. State,* 461 S.W.2d 630 (Tex.Cr.App.1970). We note as well that appellant's objection to the ruling of the court did not address the same contention presently urged on appeal and as such may not be the basis for any claimed error. *Nelson v. State,* 607 S.W.2d 554 (Tex.Cr.App.1980); *Simpkins v. State,* 590 S.W.2d 129 (Tex.Cr.App.1979). Appellant's sixth contention is overruled.

■ In his final ground of error, appellant asserts that the trial court erred in not granting his motion for an instructed verdict and for a new trial, because of the insufficiency of the evidence to support a conviction. As noted earlier in the opinion, appellant did not rest with the State but elected to offer defensive testimony, although declining to testify himself. By placing before the jury defensive evidence, appellant has rendered it unnecessary for us to consider the propriety of the trial court's ruling denying his motion for instructed verdict. By deliberate choice appellant has waived any review of the trial court's action on that motion. *Kuykendall v. State,* 609 S.W.2d 791 (Tex.Cr.App.1980); *Shirley v. State,* 501 S.W.2d 635 (Tex.Cr.App.1973).

Although appellant denominates his ground of error as touching upon the denial of his motion for new trial, his real complaint, as disclosed by the argument, challenges the sufficiency of the evidence and so, pursuant to Tex.Code Crim.Pro.Ann. art. 40.09, § 9 (Vernon Supp.1981), we shall address the complaint as we understand it.[13]

---

12. The stipulation recited, "I, Andrew Scruggs, do hereby judicially confess and admit and stipulate that I along with Lindsey Ray Seals and Roy M. Tealer did enter on the 21st day of January, A. D., 1978, the habitation belonging to Sandra Sapter with the intent to commit theft and without the owner's effective consent."

13. Tex.Code Crim.Pro.Ann. art. 40.09 § 9 (Vernon Supp.1981), in pertinent part, holds:
 . . . If the appellant includes in his brief arguments supporting a particular ground of error, they shall be construed with it in determining what point of objection is sought to be presented by such ground of error; and if the court, upon consideration of such ground of error in the light of arguments made in

Summarizing the evidence in the light most favorable to the jury verdict, the record reflects that on January 22, 1978, at approximately 5:20 a. m., three black males and one black female were observed by Lowell Paulson, an employee of Roadway Express, a freight company, in a 1956 model, 2-door gray Pontiac Tempest automobile. The vehicle was parked in the freight company parking lot. Paulson stated that the vehicle's presence aroused his suspicion because the motor was started up and no one was expected on the premises until 7:00 o'clock that morning. Paulson noticed the vehicle parked next to his own and proceeded toward the unidentified car until he came up right alongside of it next to the driver's door. As he stood there, one of the black males approached the car from the direction of a residence located across the street from the parking lot. This male was carrying an armload of clothes and a flashlight. When he reached the waiting car, he threw all the items he was carrying into the area of the back seat. Because the dome light came on when the door was opened, Paulson was better able to view the type of clothing being thrown onto the back seat and was also able to better view the occupants of the car.

Paulson obtained a good view of all the occupants except the driver, who kept his back toward the witness the whole time. Paulson nevertheless noticed that the driver was wearing a very distinctive and unusual coat. He described it as a black leather jacket with a pearlized type of gray fur collar.

As the car drove off, Paulson obtained the vehicle's license number and called the police. When the police arrived, Paulson relayed the information to them including a description of the car's occupants and the car's license number. Later that afternoon, Paulson identified two of the individuals in the car as Roy Tealer and Andrew Scruggs. He also identified appellant from a photo-

graph in which appellant was wearing the same type of jacket earlier observed on the driver of the car. Although Paulson could not identify appellant's face, he was absolutely positive about the jacket being the same one seen by him earlier.

The investigating officers, after talking to Paulson at the scene, determined that the residence of Sandra Sapter had been burglarized. One of the officers recognized the license plate number and car description supplied by Paulson and immediately drove to the location in town where he had seen this vehicle every night since setting up an investigation on it.[14] When the officer arrived at 2222 East Houston Street, the location where the car was frequently seen, he observed the vehicle parked in the driveway. After some fifteen minutes of surveillance, three black males emerged from the house, one of them carrying an armload of clothing. The men were observed entering a different automobile that was parked in front of the residence at 2222 East Houston Street and driving away from the scene without turning on the car's headlights. The car was intercepted and stopped by one of the investigating officers. The driver of the car was identified as Andrew Scruggs, the front passenger was Roy Tealer, and appellant was in the back seat. Appellant was seated next to a large stack of clothing and coats. A search of appellant's person revealed jewelry, identified as coming from the burglarized premises, in his coat pocket. The coat appellant was wearing when arrested was the same coat previously described and later identified by Paulson. All the property recovered by the police was subsequently identified by the complainant, Sandra Sapter, as coming from her burglarized house.

Through the testimony of Tealer and Scruggs, appellant raised the defense of alibi. Essentially the defensive testimony related that Tealer, Scruggs, an unidenti-

---

support thereof in the brief, can identify and understand such point of objection, the same shall be reviewed not withstanding any generality, vagueness, or any other technical defect that may exist in the language employed to set forth such ground of error.

14. On prior occasions the same vehicle had been observed around business locations under suspicious circumstances.

fied male known as "Rooster," and Rooster's girlfriend had committed the burglary. After the burglary the parties went to an all-night restaurant known as the Big House where appellant asked for a ride. From there, Tealer, Scruggs and appellant drove to 2222 East Houston to exchange cars because the 1956 Pontiac developed car trouble.

The trial court submitted a circumstantial evidence charge and the jury by its verdict rejected appellant's version of the facts. We believe the jury was fully justified in rejecting appellant's proposed alibi as an unreasonable hypothesis. Viewing the evidence in the light most favorable to the State and in support of the verdict we hold the evidence to be sufficient.

■ Evidence that a house has been burglarized together with appellant's unexplained possession of some of the property recently stolen from the house is sufficient to support a conviction for burglary. *Hardage v. State*, 552 S.W.2d 837 (Tex.Cr.App. 1977). While unexplained possession of recently stolen property is a circumstance of guilt, it is not conclusive. In the instant case, however, we find that the circumstances relied upon are all consistent with each other and with the guilt of appellant. *Cf. Pulido v. State*, 503 S.W.2d 578 (Tex.Cr. App.1974); *Smith v. State*, 472 S.W.2d 121 (Tex.Cr.App.1971).

■ There being no reasonable hypothesis raised by the evidence, the guilt of appellant necessarily remains consistent with the proof. We hold the evidence to amply support the verdict of the jury. Appellant's challenge to the sufficiency of the evidence is overruled.

Appellant has filed three pro se briefs in which he advances contentions either already presented by his appellate counsel or which we have considered and find to be without merit. We shall address only one contention which we nevertheless overrule as being without merit.

■ Appellant contends the trial court's charge to the jury on guilt/innocence is fundamentally defective in that the charge authorizes a conviction on a theory not alleged in the indictment. Specifically, appellant now objects to the portion of the charge permitting a conviction if the jury finds that appellant acted alone or as a party to the offense. *See* Tex.Penal Code Ann. § 7.01 (Vernon 1974). He argues that the indictment fails to allege that he committed the offense of burglary as a party to the offense and that the presence of a charge on parties constituted a fatal variance between the allegata and the probata. The same contention has been decided adversely to appellant in *Pitts v. State*, 569 S.W.2d 898 (Tex.Cr.App.1978). The pro se ground of error is overruled.

While examining the entire record, as we must, we note that the trial court in the verdict and judgment entered herein on September 22, 1978, in which appellant was found guilty as a habitual offender, recited the finding of certain facts which are necessary to the assessment of life imprisonment as punishment under our habitual offender statute. The recitations, however, contain error which, if not corrected, may present prolonged and unnecessary problems for the trial court in the not too distant future. In an effort to avert them, we exercise our authority to correct this error.

The language of the verdict and judgment reads in pertinent part:

... the court finds that the defendant, Lindsey Ray Seals, who has been found guilty by a jury of the felony offense of Burglary of a Habitation, as charged in the first paragraph of the indictment herein, is the one and same person who was duly, legally and finally convicted in Cause No. 75–CR–0774 on August 7, 1975, in the 186th District Court of Bexar County, Texas of the felony offense of Unlawful Possession of *Fireman* on premises Licensed to Sell Alcoholic Beverages, ... [Emphasis supplied.]

Without expressing an opinion on the validity of such an offense, we take the recitation to mean that the trial court intended the word "firearm" instead of "fireman", as clearly the evidence and allegation support the former and not the latter. Accordingly, we correct the judgment to read "possession of a firearm," and as reformed, we affirm the judgment of conviction.